# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

BARRY DAVIS SHAW,

Defendant-Appellant.

FOR PUBLICATION
June 14, 2016
9:00 a.m.

No. 313786
Ingham Circuit Court
LC No. 12-000206-FC

Before: GLEICHER, P.J., and JANSEN and SHAPIRO, JJ.

SHAPIRO, J.

In August 2011, when the complainant was 23 years old, she reported to the Lansing Police Department that defendant, her stepfather, had sexually molested her on multiple occasions between the ages of 8 and 16. Following a jury trial, defendant was convicted of nine counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b, and acquitted on an additional count of CSC-I. Defendant filed a motion for new trial on the grounds of ineffective assistance of counsel. After a ten-day *Ginther*[1] hearing, the trial court denied the motion for new trial. Defendant now appeals from his conviction and the denial of his motion for new trial. We conclude that defendant did not receive effective assistance of counsel at trial and that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. Accordingly, we reverse and remand for a new trial.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first argues that defense counsel was ineffective for a number of reasons. Because a *Ginther* hearing was held, the issue is preserved. See *People v Johnson*, 144 Mich App 125, 129; 373 NW2d 263 (1985). A defendant's ineffective assistance of counsel claim "is a mixed question of fact and constitutional law." *People v LeBlanc*, 465 Mich 575, 579; 640 NW2d 246 (2002). When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law. *Id*. The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that it made a mistake. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-1-

The right to counsel guaranteed by the United States and Michigan Constitutions, US Const, Am VI; Const 1963, art 1, § 20, is the right to the effective assistance of counsel. *United States v Cronic*, 466 US 648, 654-655; 104 S Ct 2039; 80 L Ed 2d 657 (1984); *People v Pubrat*, 451 Mich 589, 594; 548 NW2d 595 (1996). To establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different. *Strickland v Washington*, 466 US 668, 687-688, 694; 104 S Ct 2039; 80 L Ed 2d 674 (1984); *People v Frazier*, 478 Mich 231, 243; 733 NW2d 713 (2007).

## A. FAILURE TO OBJECT TO HEARSAY

Defendant argues that his counsel's performance fell below reasonable professional norms because, among other reasons, his attorney failed to object to hearsay testimony offered by five different witnesses, each of whom recounted statements made to them by the complainant in which she told them that defendant had sexually abused her years earlier. Defendant further argues that this hearsay testimony was of particular significance as it served to bolster the complainant's credibility in a case that turned on credibility.

MRE 801 defines hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Unless an exception exists, hearsay is inadmissible. MRE 802. "In a trial where the evidence essentially presents a one-on-one credibility contest between the victim and the defendant, hearsay evidence may tip the scales against the defendant, which means that the error is more harmful." *People v Gursky*, 486 Mich 596, 620-621; 786 NW2d 579 (2010).

Three of the challenged witnesses were members of the complainant's family, one was Dr. Steven Guertin, a pediatrician, who was admitted as an expert in child sexual abuse, and the last was Lansing Police Detective Elizabeth Reust. We address each in turn.

## 1. STATEMENTS TO FAMILY MEMBERS

The prosecution called three relatives of complainant—two cousins and her sister. Her cousin Elizabeth testified that, while at their grandmother's house, while upset and crying, the complainant told her that defendant had sexually touched her. Her cousin Laura testified that in 2011 or 2012 while on a family canoe outing, the complainant, crying and intoxicated, told her that defendant had abused her when she was younger and specifically recounted one incident. The complainant's sister, Brooke, testified that later in the canoe trip she, the complainant, and Laura took a walk together. During the walk Laura told Brooke that the complainant had said to her that defendant had been "molesting her ever since she was little." Brooke testified that the complainant then began to cry and recounted a specific incident in which defendant raped her in the living room while the rest of the family was out in the yard. The prosecution concedes and we agree that no exception to the hearsay rule applies to any of these statements, so admitting testimony recounting them was plain error and the failure to object constituted ineffective assistance of counsel. Given that the statements were clearly hearsay and defense counsel conceded he had no strategic reasons for failing to object, we conclude that defense counsel's performance fell below an objective standard of reasonableness. *Frazier*, 478 Mich at 243.

## 2. TESTIMONY OF DR. GUERTIN

Dr. Guertin conducted a forensic physical examination of the complainant seven years after the last alleged instance of abuse. Without objection, he recounted in detail the complainant's statements to him about the abuse. On appeal, defendant argues that the statements were inadmissible hearsay and counsel should have objected. The prosecution responds that such an objection would have been futile because the statements were admissible pursuant to MRE 803(4) because they were made for the purposes of medical treatment or diagnosis.

"Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011). The "rationale for MRE 803(4) is the existence of (1) the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and (2) the reasonable necessity of the statement to the diagnosis and treatment of the patient." *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992). An injury need not be readily apparent. *Mahone*, 294 Mich App at 215. Moreover, "[p]articularly in cases of sexual assault, in which the injuries might be latent, such as contracting sexually transmitted diseases or psychological in nature, and thus not necessarily physically manifested at all, a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *Id*.

We agree with defendant that MRE 803(4) does not apply under the circumstances presented here. First, the examination by Dr. Guertin did not occur until seven years after the last alleged instance of abuse, thereby minimizing the likelihood that she required treatment. Second, the complainant did not seek out Dr. Guertin for gynecological services. Rather, she was specifically referred to Dr. Guertin by the police in conjunction with the police investigation into the allegations of abuse by defendant.[2] And during the seven years since the last alleged incident of abuse, she had seen a different physician, who was not called as a witness, for gynecological care. Under these facts, the complainant's statements to Dr. Guertin were not admissible because they were not statements for the purposes of medical treatment. See *People v Kosters*, 175 Mich App 748, 751; 438 NW2d 651 (1989) (holding that a nurse's testimony about the victim's statements was inadmissible because the statements were not reasonably necessary to medical diagnosis and treatment). Based on defense counsel's testimony at the *Ginther* hearing, the prosecution argues that allowing the admission of hearsay statements by Dr. Guertin was strategic because he hoped to point out variations of fact in the complainant's statements. However, a review of Dr. Guertin's report, which was available to counsel prior to trial, readily reveals the absence of any significant inconsistencies, certainly none that could justify allowing a medical professional to offer extensive and highly damaging hearsay testimony. Accordingly,

---

[2] Indeed, Dr. Guertin's written report was directed to the prosecutor, not to the complainant as his patient or to any other physician.

defense counsel's performance fell below an objective standard of reasonableness when he failed to object to Dr. Guertin's hearsay testimony. *Frazier*, 478 Mich at 243.

### 3. TESTIMONY OF DETECTIVE REUST

The primary investigating officer was Detective Reust. Her testimony also contained numerous hearsay statements for which no exceptions were applicable. First, she, like other witnesses recounted the out-of-court statements made to her by the complainant, including detailed descriptions of the alleged abuse. And, in an example of hearsay within hearsay, i.e., double hearsay, she testified to the statements of Dr. Guertin that described in detail the complainant's statements to him.

Detective Reust also testified extensively about how she "confirmed" numerous "background" facts that the complainant reported to her. She recounted statements made by the complainant regarding other events and then testified that before filing the charges, she was able to confirm the veracity of those statements by comparing them to out-of-court statements made to her by others and/or by reference to various out-of-court documents. She testified that by doing so she "corroborated" what the complainant had said. In other words, Detective Reust concluded that the complainant was credible and so advised the jury. For the same reasons discussed in reference to the testimony of Dr. Guertin, we find no basis for defense counsel to have reasonably concluded that he could obtain a tactical advantage by allowing the inadmissible hearsay testimony in order to ferret out inconsistencies.[3] Accordingly, defense counsel's performance fell below an objective standard of reasonableness when he did not object to the hearsay testimony from Detective Reust. *Frazier*, 478 Mich at 243.

### 4. EFFECT ON TRIAL

Having concluded that defense counsel's performance fell below an objective standard of reasonableness with regard to the hearsay statements by the complainant's family members, by Dr. Guertin, and by Detective Reust, we turn now to whether, but for those errors, there is a reasonable probability that the outcome of the trial would have been different.

Given the time that had passed since the alleged abuse stopped, the lack of any witnesses to the charged crimes, and the lack of any significant circumstantial proofs, this case turned largely on the complainant's credibility. Because defense counsel did not object to the hearsay statements, the jury heard the complainant's version of events more than five times. And in the case of Dr. Guertin and Detective Reust the hearsay was offered with what amounted to an official stamp of approval. In closing argument, the prosecutor reminded the jury that the testimony of the complainant's reports was "consistent" with the testimony the complainant gave during trial. And Detective Reust's testimony that she corroborated a large number of incidental

---

[3] The inconsistencies addressed by defense counsel in closing argument were very minor, such as where the complainant said defendant worked and whether in a particular incident more than 10 years earlier she recalled defendant was wearing traditional underwear or thong-style underwear.

-4-

details related to her by the complainant by consulting out-of-court sources was clearly intended to bolster the complainant's credibility through references to hearsay.

Moreover, Dr. Guertin testified that, based on the complainant's medical history, he believed her allegations. He also stated that, based on the complainant's medical history, i.e., her hearsay statements, he believed that his physical findings were consistent with someone who had suffered child sexual abuse. His belief based on hearsay was critical because the medical findings themselves were ambiguous at best.[4] He testified that the hymenal "injuries" he observed upon examination of the complainant could be caused by consensual penile-vaginal intercourse and that such injuries could be seen in up to 80% of teenagers who had recurrent consensual intercourse.[5] Further, he testified that the complainant's chronic anal fissure could have been caused by consensual intercourse or by diarrhea or constipation. The minimal probative value of the physical findings further supports our conclusion regarding the significant prejudicial effect of the hearsay in this case.

Given the frequency, extent, and force of the hearsay testimony, we conclude that had defense counsel objected to its admission, there is a reasonable probability that the outcome of this case would have been different. Accordingly, defendant has satisfied both prongs of the *Strickland* test.

## B. FAILURE TO PRESENT EVIDENCE OF AN ALTERNATIVE SOURCE OF INJURY

Defendant also argues that he was denied effective assistance of counsel due to defense counsel's failure to discover and present testimony that the complainant was sexually active with Brad August, a boyfriend she lived with for some time beginning when she was 19 years old. Specifically, defendant argues that defense counsel failed to investigate and present testimony that the complainant and August engaged in consensual vaginal and anal sex. Defendant argues that this testimony would have explained why Dr. Guertin found extensive hymenal changes and the chronic anal fissure. Without this testimony, the jury was left to conclude that those injuries must have resulted from defendant having abused the complainant when she was a child.[6]

At the *Ginther* hearing, appellate counsel called August as a witness to testify that while a couple, he and the complainant had engaged in consensual vaginal and anal sex.[7] Defense

---

[4] It is unclear on what basis Dr. Guertin, a pediatrician, could offer testimony as to what hymenal changes would be expected in a sexually active adult woman.

[5] As noted below, it was undisputed that prior to Dr. Guertin's examination, the complainant had been sexual active with her boyfriend.

[6] The failure to reasonably investigate can constitute ineffective assistance of counsel. *People v Trakhtenberg*, 493 Mich 38, 52-53; 826 NW2d 136 (2012).

[7] That August would have so testified was stated as an offer of proof by appellate counsel at the *Ginther* hearing because the trial court would not permit August to testify at the *Ginther* hearing regarding any sexual activities with the complainant. The court stated that such testimony, even

counsel testified that although he called August as a witness at trial, he did not ask questions about the complainant's sexual activity with him because he believed it to be barred by the rape shield law. The trial court agreed, ruling that defense counsel's failure to present this testimony was not of consequence because it would have been barred by the rape shield law. Both counsel and the court were mistaken.

The rape shield law, MCL 750.520j, provides:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

The rape-shield law does not prohibit defense counsel from introducing "specific instances of sexual activity . . . to show the origin of a physical condition when evidence of that condition is offered by the prosecution to prove one of the elements of the crime charged provided the inflammatory or prejudicial nature of the rebuttal evidence does not outweigh its probative value." *People v Mikula*, 84 Mich App 108, 115; 269 NW2d 195 (1978); see also *People v Haley*, 153 Mich App 400, 405-406; 395 NW2d 60 (1986) (holding that "once the prosecution introduced medical evidence to establish penetration, evidence of alternative sources of penetration became highly relevant to material issues in dispute"). Accordingly, evidence of an alternative explanation for the hymenal changes and source for the chronic anal fissure would have been admissible under the exception to the rape shield statute and defense counsel's failure to ask the boyfriend about these issues fell below an objective standard of reasonableness.

It is difficult to determine, with confidence, whether August's testimony on these matters would have had a significant effect on the trial given that he was not permitted to offer the testimony at the *Ginther* hearing and so there is an inadequate record. However, assuming what appellate counsel proffered was accurate, the testimony would likely have been very significant given that without it there was no likely explanation, other than defendant's guilt, to explain the extensive hymenal changes and the chronic anal fissure. Dr. Guertin essentially testified that the hymenal changes were consistent with those of either a sexually active adult woman or an abused child. The fact that the complainant was sexually active and living with her boyfriend at age 19, well before Dr. Guertin's examination, was therefore highly relevant. The same is true

---

as an offer of proof, is barred by the rape shield statute. The trial court's refusal to allow the testimony for purposes of the *Ginther* hearing was erroneous because such testimony is permitted as an offer of proof where the applicability of the rape shield statute is at issue. See *People v Hackett*, 421 Mich 338, 350; 365 NW2d 120 (1984).

as to proffered testimony regarding consensual anal sex because the complainant testified that she had not had anal sex other than defendant's forcible penetration. Based on that unchallenged testimony, it is difficult to see why the jury would question the prosecution's closing argument that that "the physical findings absolutely match with what [the complainant] says happened to her . . . . That's not a coincidence. That's because it actually happened."[8]

We conclude that trial counsel's failure to present this testimony at trial constituted ineffective assistance and that its admission would have resulted in a reasonable probability of a different result.[9]

## II. IMPEACHMENT TESTIMONY

Defendant also argues that the trial court erred when it admitted, over objection, hearsay testimony from Officer Kasha Osborn.[10] We agree.

The complainant's brother, who was interviewed by the police, was asked on direct examination whether he recalled a fight between his mother and defendant that occurred when he was 12 or 13; he denied memory of the incident and stated that he did not remember telling the police about it. Over a defense objection, Officer Osborn testified that the complainant's brother told her about an incident that occurred at the family's house when he was 12 or 13. She testified that the complainant's brother told her that defendant came downstairs in a state of partial undress acting very angry towards the complainant and saying she was "in trouble." She also recounted that the complainant's brother told her that in the same incident, defendant became "heated" and grabbed the complainant's mother by the neck and threatened to kill her.

The complainant's brother's testimony had little, if any, probative value. It amounted to background evidence regarding the layout of the house, the nature of household disciplinary

---

[8] The prosecution argues that defense counsel's failure to present August's testimony was harmless because Dr. Guertin stated that the complainant "had adult consensual sex" and the complainant testified that she had sexual relations with the boyfriend she was dating at the time of trial. These two brief references, however, were unlikely to provide the jury a basis to conclude that the complainant was in a sexually active relationship before Dr. Guertin's examination. Moreover, they demonstrate the prosecution's recognition that the rape shield statute did not apply.

[9] Given our resolution of defendant's arguments pertaining to the failure to object to hearsay and the failure to investigate and present evidence regarding an alternative source for the extensive hymenal changes and the chronic anal fissure, we find it unnecessary to address defendant's remaining allegations of ineffective assistance of counsel.

[10] We review a trial court's evidentiary decisions for an abuse of discretion. *People v Unger*, 278 Mich App at 210, 216; 749 NW2d 272 (2008). We review unpreserved issues for plain error affecting defendant's substantial rights. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).

methods, school and bus schedules, his football practice, the existence of a swimming pool, the name of a neighbor, confirmation that defendant had a speedo, and the fact that he learned about the allegations of abuse after a canoeing trip. The complainant's brother did not witness any of the abuse, nor did the prosecution suggest that he did. At the same time, the complainant's brother did not provide exculpatory testimony, nor did the defense suggest that he did. A review of the complainant's brother's testimony leaves little doubt that the prosecution's purpose in calling him as a witness was to have him describe the incident later described by Officer Osborn.

Immediately after the complainant's brother's testimony denying both the incident and the statement to the police, Officer Osborn was called to testify and, as described above, she recounted the story that the complainant's brother allegedly told her. Defense counsel objected on grounds of hearsay. On appeal, defendant also argues that admission of Officer Osborn's testimony also violated MRE 404(b) and MRE 403.

The trial court held that the statement was not hearsay because it was a prior inconsistent statement by the complainant's brother that was being offered for impeachment purposes. "When a witness claims not to remember making a prior inconsistent statement, he may be impeached by extrinsic evidence of that statement." *People v Jenkins*, 450 Mich 249, 256; 537 NW2d 828 (1995). However, "[t]he purpose of extrinsic impeachment evidence is to prove that a witness made a prior inconsistent statement—not to prove the contents of the statement." *Id*. "Testimony of 'the impeaching witness presenting extrinsic proof should state the time, place, circumstances of the statement and the subject matter of the statement but not its content.' " *Id*. at 257 n 20, quoting 28 Graham, Federal Practice & Procedure (interim ed), § 6583, pp 191-192.

In *People v Stanaway*, 446 Mich 643, 692-693; 521 NW2d 557 (1994), the Supreme Court held that there are limitations on the use of extrinsic evidence of a witness's prior inconsistent statements. In that case the witness testified that he had never made any statements that implicated the defendant in sexually abusing the victim. *Id*. at 689. The prosecutor then had the investigating officer testify that the witness had told him that the defendant had once stated that he had "screwed a young girl" and would be in trouble if caught. *Id*. at 690. The Court reasoned:

> The substance of the statement, purportedly used to impeach the credibility of the witness, went to the central issue of the case. Whether the witness could be believed in general was only relevant with respect to whether that specific statement was made. This evidence served the improper purpose of proving the truth of the matter asserted. MRE 801.

> While the prosecutor could have presented defendant's alleged admission by way of the nephew's statement, he could not have delivered it by way of the officer's testimony because the statement would be impermissible hearsay. *Likewise, a prosecutor may not use an elicited denial as a springboard for introducing substantive evidence under the guise of rebutting the denial.* Here, the prosecutor used the elicited denial as a means of introducing a highly prejudicial 'admission' that otherwise would have been inadmissible hearsay. The testimony of [the officer] was that [the witness] said that [the defendant] said that he had sex with a young girl. This would have been clearly inadmissible

without [the witness's] denial. It is less reliable in the face of the denial. Absent any remaining testimony from the witness for which his credibility was relevant to this case, the impeachment should have been disallowed. [*Id.* at 692-693 (citations omitted; emphasis added).]

In *People v Kilbourn*, 454 Mich 677, 682; 563 NW2d 669 (1997), this Court summarized the rule in *Stanaway*, stating: "A prosecutor cannot use a statement that directly tends to inculpate the defendant under the guise of impeachment when there is no other testimony from the witness for which his credibility is relevant to the case." Further, "impeachment should be disallowed when (1) the substance of the statement purportedly used to impeach the credibility of the witness is relevant to the central issue of the case, and (2) there is no other testimony from the witness for which his credibility was relevant to the case." *Id*. at 683.

There is nothing to suggest that the *content* of the complainant's brother's alleged statement to Officer Osborn was needed to impeach his testimony that he did not make such a statement. Moreover, there was no other testimony from him that made his credibility relevant to the case. As in *Stanaway*, the prosecutor improperly used "an elicited denial as a springboard for introducing substantive evidence under the guise of rebutting the denial" and so "[a]bsent any remaining testimony from the witness for which his credibility was relevant to this case, the impeachment should have been disallowed." *Stanaway*, 446 Mich at 693.

The effect of this improperly admitted hearsay was heightened by the fact that the trial court failed to instruct the jury that Officer Osborn's testimony was for impeachment purposes only. In both *Stanaway* and *Jenkins*, our Supreme Court reversed convictions where improper hearsay was admitted on the grounds of impeachment despite the fact that the juries had received proper cautionary instructions. *Id.* at 690-692, 695; *Jenkins*, 450 Mich at 263. In *Jenkins*, the Court stated:

> We must be mindful of the fact that prior un-sworn statements of a witness are mere hearsay and are, as such, generally inadmissible as affirmative proof. The introduction of such testimony even where limited to impeachment, necessarily increases the possibility that a defendant may be convicted on the basis of unsworn evidence, for despite proper instructions to the jury, it is often difficult for them to distinguish between impeachment and substantive evidence. [*Id*. at 261-262 (quotation omitted).]

In *Stanaway*, the trial court gave two such curative instructions: one immediately after the statement was admitted and the other during the final jury instructions. *Stanaway*, 446 Mich at 690-692. In the instant case, the jury was essentially permitted to consider the hearsay testimony as substantive evidence. The failure to give such a limiting instruction was plain error and defense counsel's failure to request it was below the standard of effective representation.

The trial court also failed to provide a prior bad acts limiting instruction despite the potential for prejudice in testimony that described defendant grabbing the complainant's mother by the neck and threatening to kill her. This testimony did not provide evidence of "motive, opportunity, intent, preparation, scheme, plan or system" as to the charged crime, nor any other basis for admission under MRE 404(b). It was, however, classic "bad man" evidence that

provided defendant had a character for violence. As the Supreme Court instructed in *People v VanderVliet*, 444 Mich 52, 74; 508 NW2d 114 (1993) amended 445 Mich 1205 (1994): "[t]he evidence must be relevant to an issue other than propensity under Rule 404(b), to 'protect[] against the introduction of extrinsic act evidence when that evidence is offered *solely* to prove character.'" (quotation omitted; emphasis and brackets in original). "To admit evidence under MRE 404(b), the prosecutor must first establish that the evidence is logically relevant to a material fact in the case, as required by MRE 401 and MRE 402, and is *not* simply evidence of the defendant's character or relevant to his propensity to act in conformance with his character." *People v Jackson*, 498 Mich 246, 259, 869 NW2d 253 (2015) (quotation omitted; emphasis in original). The failure to give such a limiting instruction was plain error and defense counsel's failure to request it was below the standard of effective representation.[11]

It can be fairly argued that in the context of an otherwise proper trial, the erroneous admission of this particular testimony might very well have been harmless error. However, given the extent to which the jury heard other improperly admitted evidence it is difficult to single out a particular error and conclude that it was harmless.

### III. CONCLUSION

During this trial, defense counsel failed to object to the improper admission of multiple hearsay statements in which the complainant was the declarant. As conceded by the prosecution on appeal, the hearsay offered by three family members did not fall within any hearsay exception. The testimony of the police officer similarly contained inadmissible hearsay statements made by the complainant as well as double hearsay regarding what the complainant told Dr. Guertin. Further, Dr. Guertin's own testimony about the declarant's statements was hearsay and did not fall within the exception in MRE 803(4). Finally, the officer's testimony providing corroboration of the complainant's credibility through reliance on often unidentified out-of-court statements and out-of-court documents was hearsay. In addition to failing to object to the hearsay, defense counsel also failed to discover and/or present the admissible evidence of alternative sources of the complainant's injuries. The quantity of improperly admitted testimony was so extensive, and its content so significant, that there is a reasonable probability that, but for counsel's errors the outcome of the trial would have been different.

We also conclude that the trial court abused its discretion when it allowed a police officer to testify over objection to the content of a statement the complainant's brother allegedly made to

---

[11] Defendant argues that one of his CSC-I convictions was supported by insufficient evidence because the complainant did not testify how old she was during the incident. However, when viewed in context it is clear that the prosecutor's questions about the complainant's age in the seventh grade were setting the timeframe for the subsequent questions about the time the complainant was allegedly abused after being grounded. Accordingly, because there is sufficient evidence to support defendant's conviction, we need not vacate defendant's conviction, *People v Mitchell*, 301 Mich App 282, 294; 835 NW2d 615 (2013), and on retrial the prosecutor can bring this charge again.

the police.  The testimony introduced substantive evidence under the guise of rebutting the brother's denial.  Further, the content of the statement violated MRE 404(b) and MRE 403.

Reversed and remanded for a new trial.  We do not retain jurisdiction.


/s/ Douglas B. Shapiro
/s/ Elizabeth L. Gleicher