# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

RANDY JAMES BERKEYPILE,

        Defendant-Appellant.

UNPUBLISHED
May 16, 2017

No. 331922
Jackson Circuit Court
LC No. 15-005787-FC

Before: GADOLA, P.J., and JANSEN and SAAD, JJ.

PER CURIAM.

Defendant appeals his convictions following a jury trial of two counts of first-degree criminal sexual conduct (CSC I), MCL 750.520b(1)(b), two counts of second-degree criminal sexual conduct (CSC II), MCL 750.520c(1)(b), and two counts of CSC II involving a person less than 13 years of age where the defendant is 17 years of age or older, MCL 750.520c(2)(b). Defendant was sentenced to concurrent prison terms of 6 to 14 years for the CSC I and 4 to 12 years for the CSC II convictions. We affirm.

## I. PERTINENT FACTS

The victim, RR, is defendant's stepdaughter. At trial, she testified to a progression of sexual abuse by defendant that began when she was 12 years old. According to RR, the assaults initially consisted of defendant groping her chest and gradually progressed to defendant going under and on top of her clothing and touching her chest and vaginal area. She testified that on one occasion, defendant tried to make her touch his penis, but she closed her hand in a fist and refused to open it. She also testified that defendant attempted to put his penis in her mouth but was unsuccessful. According to RR, most of the assaults occurred in her bedroom, the living room, defendant's room, and her mother's room, and on Wednesdays when her mother was at work and her brother was in school.

The last assault occurred on July 30, 2013, when RR was 14 years old. RR testified that she was sitting on her bed, playing a game on her computer, when defendant walked into her room and started groping her. She stated that at some point, defendant pushed her down on her side and started touching her breast and inside her vagina. Defendant then took her top and pants off, and put his mouth on her breast and vagina, as she lay on the floor. She testified that she was on her period and was using tampons when defendant put his mouth on her vagina, but changed her tampon after the assault. After the assault ended, defendant took her to a Pizza Hut

-1-

and to Lowe's. When they got back to the house, RR asked defendant to drive up to the house while she got the mail. RR then called the police and reported the assaults.

That same day, RR underwent a sexual assault examination. Because RR claimed that defendant put his mouth on her breasts and vagina, those areas were swabbed and tested for saliva. The swabs from the breasts tested positive for saliva and were forwarded for DNA testing. At trial, evidence was presented that defendant's DNA was found on the swabs from RR's breasts.[1]

## II. ANALYSIS

On appeal, defendant argues that he received ineffective assistance of counsel. To preserve an ineffective assistance of counsel claim, a defendant must move for a new trial or a *Ginther*[2] hearing. In this case, defendant did neither; therefore, this Court's review is limited to mistakes apparent from the record. *People v Heft*, 299 Mich App 69, 80; 829 NW2d 266 (2012).

A criminal defendant has the fundamental right to the effective assistance of counsel. *United States v Cronic*, 466 US 648, 654; 104 S Ct 2039; 80 L Ed 2d 657 (1984). "To establish ineffective assistance of counsel, the defendant must first show: (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms, and (2) that there is reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *People v Toma*, 462 Mich 281, 302-303; 613 NW2d 694 (2000). In order to meet the second requirement, a defendant must show that counsel's error was so serious that the defendant was deprived of a fair trial. *People v LeBlanc*, 465 Mich 575, 578; 640 NW2d (2002).

"Defense counsel must be afforded broad discretion in the handling of cases, which often results in taking the calculated risk which still do sometimes, at least, pluck legal victory out of legal defeat." *People v Pickens*, 446 Mich 298, 325; 521 NW2d 797 (1994) (quotation marks and citation omitted). Therefore, in matters of trial strategy, a defendant is required to overcome a strong presumption that counsel's performance constituted sound strategy. *People v Mitchell*, 454 Mich 145, 156; 560 NW2d 600 (1997). An appellate court will not substitute its judgment regarding matters of strategy, nor should it "assess counsel's competence with the benefit of hindsight." *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999).

Defendant claims that RR's statements to the Sexual Abuse Nurse Examiner (the SANE nurse) violated the rule against hearsay. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the

---

[1] Specifically, the swab from the left breast yielded "a straight single source" that matched defendant's DNA, and the swab from the right breast yielded two donors, with defendant being the major donor. The DNA expert stated that there was not enough DNA from the minor donor to make any further analysis, but she opined that it could have been RR's DNA.

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

matter asserted." MRE 801(c). However, "'[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source therefore insofar as reasonably necessary to such diagnosis and treatment' are admissible as an exception to the hearsay rule." *People v Garland*, 286 Mich App 1, 8; 777 NW2d 732 (2009), quoting MRE 803(4). "The rationale supporting the admission of statements under this exception is the existence of (1) the reasonable necessity of the statement to the diagnosis and treatment of the patient, and (2) the declarant's self-interested motivation to speak the truth to treating physicians in order to receive proper medical care." *Id.* at 8-9.

During trial, the SANE nurse testified that she conducted an examination of RR on the day of the last sexual assault. She stated that she prepared a report and read from the report during her testimony, which contained numerous statements that RR had made during the examination. RR's statements to the nurse were reasonably necessary for her treatment and diagnosis. See *id.* at 9. RR went to the hospital for medical care on the day of the assault and was referred to the SANE nurse to determine whether she had been sexually assaulted. The SANE nurse's testimony was consistent with RR's in-court version of what occurred, which detailed the sexual assaults RR endured from defendant for two to two-and-a-half years, including the one on the day of the medical examination. The nurse testified that obtaining the patient's medical history was very important because it would influence her findings and direct her on how best to treat the victim. She also stated that obtaining information about the assault was necessary to guide her on how best to proceed with the examination. She concluded, based on the examination, that her observations on RR's body were consistent with RR's history and her description of the assault.

In addition, RR had a self-interested motivation to speak the truth in order to obtain medical treatment. See *id.* At the time of the examination, RR was over the age of 10 years old; "thus there was a rebuttable presumption that she understood the need to tell the truth to the nurse." *Id.* "The fact that [RR] did not have any immediate apparent physical injuries did not rebut this presumption. Often, the injuries inflicted on the victim in a sexual assault, such as transmission of a sexually transmitted disease, immune deficiency virus, or psychological trauma, are impossible to detect at first but still require diagnosis and treatment." *Id.* at 9-10.

Defendant relies on this Court's decision in *People v Shaw*, 315 Mich App 668; 892 NW2d 15 (2016), to argue that RR's statements to the nurse were inadmissible hearsay. In *Shaw*, the complainant was 23 years old when she reported to the police that the defendant, her step-father, had sexually molested her on multiple occasions when she was between the ages of 8 and 16. *Id.* at 671. The treating physician conducted a forensic examination of the complainant seven years after the last alleged instance of abuse, and testified to the statements made by the complainant during the examination. *Id.* at 674. This Court concluded that MRE 803(4) did not apply where the forensic physical examination of the complainant was conducted seven years after the last alleged instance of abuse, the complainant was referred to the pediatrician by the police in conjunction with the police investigation into the allegation of abuse by the defendant, and during the seven years since the last incident of abuse the complainant had seen a different physician, who was not called as a witness, for gynecological care. *Id.* at 675.

This case is factually distinguishable from *Shaw*. Here, unlike in Shaw, RR was referred for medical examination on the same day that the last sexual assault occurred. Further, unlike in *Shaw* where the complainant had seen a different physician other than the testifying physician, the SANE nurse was the first medical personnel to examine RR after she reported the sexual assault that occurred on that day. Therefore, the information obtained during the pre-examination/medical interview was crucial to the SANE nurse's ability to determine whether RR had been sexually assaulted and was properly admitted under MRE 803(4). Accordingly, the statements were admissible, and any objection to their admission would have been futile. As such, counsel cannot be deemed ineffective for failing to raise a futile objection. *People v Eisen*, 296 Mich App 326, 329; 820 NW2d 229 (2012).

Defendant also argues that trial counsel failed to obtain an expert to properly test the saliva sample for the presence of tobacco or nicotine. RR's mother testified at trial that she did not believe RR's accusations against defendant. After an officer relayed the results of the DNA testing to RR's mother, she stated, "Well, [RR] could have taken her finger and stuck her finger in [defendant's] chew spit bottle and rubbed it on her nipples." Based on this information, the evidence was sent back to be tested for the presence of tobacco. None was detected, but the forensic scientist indicated that trace amounts possibly could have been detected with more sensitive instruments. But the forensic scientist also stated that, although some forensic laboratories may have more sensitive instruments, he was unsure of which laboratories would have such an instrument.

It is clear that, assuming counsel could have arranged for an expert who would have done such testing, defendant admitted that he chews tobacco and any presence that could have been found on RR could have simply come from his mouth. Thus, such a test would not have established that defendant did not lick RR's breasts. We also note that defendant testified in his defense and did not offer any evidence to support this theory; he merely denied sexually assaulting RR and could not offer any explanation as to why RR would make up the allegations. Therefore, defendant's claim fails because he has failed to identify the instrument, if any, that would have detected the presence of tobacco, has failed to show that tobacco would have been detected, and has failed to show how a positive result for the presence of tobacco would have altered the outcome of the lower court proceedings.

Finally, defendant avers that trial counsel failed to have proper testing done to identify the identity of the minor/trace DNA donor. But defendant fails to explain how the presence of another's DNA somehow would exonerate himself. The fact remains that defendant's DNA was found on RR. Thus, counsel was not ineffective for failing to follow up on a pointless investigation.

Affirmed.

/s/ Michael F. Gadola
/s/ Kathleen Jansen
/s/ Henry William Saad

-4-