*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

          Plaintiff-Appellee,

v

SARANTAY DEVON HOUSTON,

          Defendant-Appellant.

UNPUBLISHED
September 12, 2024

No. 367120
Wayne Circuit Court
LC No. 16-008127-01-FH

Before: K. F. KELLY, P.J., and CAVANAGH and M. J. KELLY, JJ.

PER CURIAM.

Defendant, Sarantay Houston, was convicted following a jury trial of assault with intent to commit great bodily harm less than murder, MCL 750.84; felon in possession of a firearm, MCL 750.224f; carrying a concealed weapon, MCL 750.227; and carrying a firearm during the commission of a felony, MCL 750.227b. In a prior appeal, this Court affirmed his convictions and sentences.[1] Thereafter, Houston applied for leave to appeal in our Supreme Court, which entered an order vacating the portion of the prior opinion "addressing tool mark identification evidence" and remanded to the trial court for an evidentiary hearing.[2] Following the evidentiary hearing, the trial court entered an order denying Houston's motion for a new trial. Houston now appeals that order as of right. Because the trial court did not abuse its discretion by denying Houston's motion for a new trial, we affirm.

## I. BASIC FACTS

The pertinent facts were set forth in this Court's prior opinion:

       Tyrone Powell was leaving Theresa's Bar when he accidently bumped into [Houston] in the parking lot. [Houston] shoved him and Powell shoved back.

---

[1] *People v Houston*, unpublished per curiam opinion of the Court of Appeals, issued May 7, 2019 (Docket No. 339254), vacated in part 505 Mich 967 (2020).

[2] *People v Houston*, 505 Mich 967 (2020).

[Houston] then lifted up his shirt to display a weapon and Powell began to back away. A second man hit Powell on the head from behind. A chase ensued during which Powell heard from seven to ten shots. He looked behind him and saw [Houston] shooting at him. Powell was shot twice and fell to the ground. About five other men caught up with Powell and started stomping, punching, and kicking him while he was on the ground. [Houston] was among this group. The assault eventually stopped and Powell was taken to the hospital by a friend where he was treated for a fractured eye socket, fractured femur and contusions to the head.

At trial, Powell made a definite and positive identification of [Houston] as the shooter. In addition, the forensic scientists at the Michigan State Police Forensic Science Division were able to match the casings found at the scene of the shooting to a pistol connected to [Houston] that was retrieved under a search warrant in an unrelated case. [Houston] presented five alibi witnesses, mostly family members, who testified that, at the date and time of the shooting, they were at a birthday party with [him]. An alibi witness also revealed that a family cousin lived at the residence where the pistol was found beneath a mattress in an upstairs bedroom, and family, including [Houston], had often partied there. [*Houston*, unpub op at 1-2.]

As noted above, Houston appealed to this Court, which affirmed. *Id*. Thereafter, the Supreme Court vacated this Court's opinion in part as it related to the tool mark identification testimony and remanded for an evidentiary hearing. *Houston*, 504 Mich at 967. The Supreme Court stated that, "[c]ontrary to the statement by the Court of Appeals in this case, the defendant's trial counsel was not required to choose between an alibi defense and challenging the expert testimony on firearms and ballistics, as challenging the prosecution's expert would not have undermined the defendant's alibi defense." *Id*.

On remand, Houston filed a motion seeking an evidentiary hearing, assistance in serving a subpoena, and a declaration of indigency. The trial court entered a stipulated order declaring Houston indigent and allowing him to receive a court-appointed expert. The court also entered a stipulated order for a proposed defense expert to examine ballistics evidence. Thereafter, the court held an evidentiary hearing. The court heard testimony from Houston's trial lawyer and from the prosecution's tool mark expert Rebecca Smith. Following the hearing, the court denied Houston's motion for a new trial. The court concluded that Houston's lawyer did not provide constitutionally deficient assistance by not filing a motion for a *Daubert*[3] hearing to challenge the science of toolmark identification presented by the prosecution's expert. Further, the court concluded that the lawyer did not provide deficient assistance by failing to cross-examine the prosecution's tool mark expert. Additionally, the court determined that Houston had failed to show that he was prejudiced by his lawyer's allegedly deficient performance.

---

[3] *Daubert v Merrell Dow Pharms,* Inc, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

## II. MOTION FOR A NEW TRIAL

### A. STANDARD OF REVIEW

Houston argues that the trial court abused its discretion by denying his motion for a new trial after concluding that he had failed to establish that his trial lawyer provided constitutionally deficient assistance. "This Court reviews for an abuse of discretion a trial court's decision on a motion for a new trial." *People v Rogers*, 335 Mich App 172, 191; 966 NW2d 181 (2020). Whether a defendant has been denied the effective assistance of a lawyer is "a mixed question of fact and constitutional law." *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016) (quotation marks and citation omitted). Questions of law are reviewed de novo, and the court's factual findings are reviewed for clear error. *Id*. at 671-672. Clear error exists if "this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. 672.

### B. ANALYSIS

A defendant is entitled to a new trial because of ineffective assistance by his trial lawyer if he or she can show (1) that his lawyer's "performance fell below an objective standard of reasonableness," and (2) that "but for" his lawyer's "deficient performance, a different result would have been reasonably probable." *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Solmonson,* 261 Mich App 657, 663; 683 NW2d 761 (2004).

To show deficient performance, "the defendant must overcome the strong presumption that [his or her lawyer's] assistance constituted sound trial strategy." *Armstrong*, 490 Mich at 290. "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). Instead, the reviewing court "must determine whether the strategic choices were made after less than complete investigation." *Id*. (quotation marks, citation, and alteration omitted). "[A]ny choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id*. (quotation marks and citation omitted).

### 1. FAILURE TO SEEK A *DAUBERT* HEARING

Houston first argues that his lawyer provided deficient assistance by failing to challenge the tool mark evidence at a *Daubert* hearing. We disagree.

At the evidentiary hearing, Houston's trial lawyer testified that he discussed the discovery in the case, including the information about "the ballistics that were done on the firearm," with Houston and they strategized a defense theory centered on Houston's alibi and Houston not being involved in the shooting. He explained that his strategy was to not challenge the ballistics evidence because "it was unimportant" to the alibi theory. Houston's lawyer further testified that, based upon his experience of "at least 30 years," he did not "want the jury to be confused" by an attempt to undercut the toolmark evidence when they had "a clear [alibi] defense." He stressed that he wanted the jury "to stay focused on the defense of alibi." He added that his decision to point out the lack of evidence of Houston living at the house where the gun was found was because that was "something that [was] apparent on its face." The court found his testimony credible.

In light of the defense strategy to avoid confusing the jury with testimony challenging the toolmark analysis, we conclude that the science behind the expert's testimony was irrelevant to the defense theory. Houston's lawyer advanced his alibi defense by presenting five alibi witnesses. That his strategy was unsuccessful "does not constitute a deficient performance." *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). Accordingly, the decision not to request a *Daubert* hearing was not objectively unreasonable.

Moreover, even if Houston could show that his lawyer provided deficient assistance by failing to request a *Daubert* hearing, Houston cannot establish that he was prejudiced by that decision. After listening to the testimony from the toolmark expert, the trial court found that it would not have ruled the evidence inadmissible under MRE 702.

"MRE 702 incorporates the standards of reliability that the United States Supreme Court established in *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993)[.]" *People v Bowden*, 344 Mich App 171, 186-187; 999 NW2d 80 (2022) (quotation marks and citation omitted). "A court considering whether to admit expert testimony under MRE 702 acts as a gatekeeper and has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012). The court "must determine at the outset whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." *Bowden*, 344 Mich App at 187 (quotation marks and citation omitted). The analysis "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id*. (quotation marks and citation omitted). "Some factors that bear on the trial court's inquiry include: (1) whether the scientific knowledge or technique can, and has been, tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) the known or potential rate of error, (4) the existence and maintenance of standards controlling the technique's operation, and (5) whether there is general acceptance of the scientific technique." *Id*. (quotation marks and citation omitted).

Houston asserts that the tool mark and ballistics evidence would have been inadmissible at trial if his trial lawyer would have brought a *Daubert* challenge. He notes that a number of federal courts have also recognized the subjectivity involved in toolmark and ballistics identification and have, accordingly, limited such testimony. See, e.g., *United States v Glynn*, 578 F Supp 2d 567, 570, 574-575 (SD NY, 2008) (stating "ballistics comparison lacks defining standards," and limiting any ballistics testimony by examiners "to testify only that a firearms match was 'more likely than not[.]' "); *United States v Taylor*, 663 F Supp 2d 1170, 1179 (D NM, 2009) (stating this practice "creates a potentially significant 'observer effect' whereby the examiner knows that he is testing a suspect weapon and may be predisposed to find a match."); and *United States v Monteiro*, 407 F Supp 2d 351, 372 (D Mass, 2006) (concluding the methodology of firearms identification is reliable, but stating "there is no reliable statistical or scientific methodology which will currently permit the expert to testify that it is a 'match' to an absolute certainty."). Federal caselaw does not constitute binding precedent, but may be considered as persuasive authority when addressing matters of state law. *People v Rogers*, 338 Mich App 312, 327; 979 NW2d 747 (2021). Notably, none of the authorities cited above concluded that toolmark identification testimony is "junk science" that is completely unreliable and, therefore, inadmissible. Accordingly, Houston

cannot prevail simply by pointing out that caselaw recognizing the weaknesses in toolmark and firearm identification testimony.  Instead, as this Court noted in our prior opinion:

> The forensic science of tool mark analysis has been a recognized method of ballistics testing for decades. The fact that some scientists and legal scholars have questioned the reliability of making a positive connection between bullet casings and a specific gun does not disqualify an expert in forensic science from demonstrating a match.  [*Houston*, unpub op at 3.]

Houston next contends that, because there is a subjective component to the tool mark analysis, the testimony would have been inadmissible under *Daubert*.  In support, he directs this Court to the expert's testimony at the evidentiary hearing acknowledging that there is a subjective component to toolmark identification testimony.  Yet, the mere fact that part of the analysis is subjective does not mean that the expert's testimony was not based upon reliable scientific principles.  Indeed, at the evidentiary hearing, the expert explained her methodology and controlled testing, as well as her firearm identification certification through the Association of Firearm and Tool Mark Examiners.  She stated that she was "sure" that the error rate was under 0.5 %.  She further stated that the field was based upon objective science but involves subjectivity because one examiner may reach a different conclusion than another examiner.  She testified that her identification was based upon her observation of "a sufficient agreement of the individual characteristics." Her observations, she added, were rooted in her sufficient knowledge, experience, and training.  In light of the testimony elicited at the evidentiary hearing, the expert's opinion was rationally derived from a sound foundation.  See *Bowden*, 344 Mich App at 187.  The conclusion a *Daubert* hearing likely would have been unsuccessful supports the trial court's holding that Houston was not deprived of the effective assistance of his trial lawyer.

Given the record in this case,  Houston's lawyer did not provide constitutionally deficient assistance by failing to move for a *Daubert* hearing.

## 2. CROSS EXAMINATION OF TOOLMARK EXPERT

Houston next argues that his lawyer provided ineffective assistance by failing to cross-examine the expert's testimony.  Yet, the testimony at the evidentiary hearing shows that the decision was part of the defense strategy to focus on the alibi defense and not risk confusing the jury with a challenge to the toolmark evidence.  Houston's lawyer testified he was "not at all" concerned about the expert's testimony linking the firearm found at the residence to the shooting because:

> [A]s far as I was concerned, and I discussed this with [Houston], there was no evidence that could say it was [his] gun.  There was no fingerprint evidence as it related to [him].  There was no visual evidence that [he] was connected to the [residence where the firearm was recovered]. . . .

Houston's lawyer added that "[w]hen you're talking about evidence of ballistic evidence, then you're talking about something in the realm of an expert and you're asking the jury to pay attention to what an expert says or does. . . .  There's no reason for you to try and confuse the jury. . . ." Houston's lawyer was deliberate in not pursuing a defense against the expert's testimony, and

"[t]he questioning of witnesses is presumed to be a matter of trial strategy." *Petri*, 279 Mich App at 413. Houston has failed to show his lawyer's decision to not cross-examine the expert was objectively unreasonable. Even assuming the performance was deficient on this basis, Houston's claim of ineffective assistance fails because there is no reasonable probability that cross-examining the expert's testimony would have made a difference in the outcome based upon the positive identification of Houston as the shooter.

In sum, Houston has not shown that his lawyer's performance was objectively unreasonable so as to deprive him of a fair trial. The trial court did not abuse its discretion by denying his motion for a new trial based upon ineffective assistance of his trial lawyer.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Mark J. Cavanagh
/s/ Michael J. Kelly