*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

EDWIN RUSSEL BLACKMER,

Defendant-Appellant.

UNPUBLISHED
April 08, 2025
11:30 AM

No. 364435
Tuscola Circuit Court
LC No. 2022-015791-FC

Before: BOONSTRA, P.J., and LETICA and RICK, JJ.

PER CURIAM.

Defendant was convicted by a jury of one count of assault with intent to murder (AWIM), MCL 750.83, four counts of assault by strangulation, MCL 750.84(1)(b), one count of interference with electronic communications, MCL 750.540(5)(a), and six counts of domestic violence, MCL 750.81(2). The trial court sentenced defendant to serve 210 months to 45 years' imprisonment for the AWIM conviction, 80 months to 10 years' imprisonment for the assault by strangulation convictions, 270 days in jail for the conviction of interference with electronic communications, and 93 days in jail for the domestic violence convictions. We affirm.

## I. FACTUAL BACKGROUND

Defendant and the victim were married in 2017. Defendant inflicted violence on the victim for the duration of the marriage. His assaultive conduct culminated in a series of six domestic-assault incidents in 2021 that ultimately led to defendant's convictions. During these brutal incidents, defendant dragged the victim by her hair, threw her into things, slammed her head into walls or the ground, and threatened to kill the victim or himself. The couple's young children were often present during the assaults, and defendant regularly threatened to take the children from the victim. During four of the incidents, defendant choked the victim, and twice threatened to harm her with a boxcutter. On another occasion, defendant threw the victim into a pool, refused to let her get out, and held her head underwater. The victim testified:

> [H]e said you got lucky. He said you should be—you should be dead right now. And I told him, I said what would've happened had you killed me? Of course at this point this is me yelling at him like what would've happened if you killed me?

-1-

He said well, I know CPR. You would've been fine. It's a lesson you needed to learn. But in the same breath was you should just be dead. You shouldn't have gotten that chance to learn that lesson. You should've just learned it by now.

During another incident, defendant racked a shotgun and threatened to kill himself. He boasted that if he aimed the gun a particular way, he could kill them both. When the victim tried to call 911, defendant hung up the phone, and when the operator called back, defendant said that his three-year-old child had accidentally dialed 911 while playing with the phone.

During the final incident, defendant grabbed the victim by the hair and dragged her into the living room. When she attempted to leave, defendant put her in a choke hold and told her that he should have already killed her. Defendant went on to tell the victim that there was plenty of state land and that hiding her body would be easy. He further stated that she would not get to see her daughters grow up and that she "deserved it." Defendant then pulled out a boxcutter and said that he would kill her with it. Believing that defendant would kill her if she stayed with him any longer, the victim eventually escaped from the home with her children. She snuck out of the house while defendant was asleep. She then went to the local sheriff's department, where she filed a police report. Defendant was arrested the same day.

Along with the testimony of the victim and other witnesses, exhibits were admitted at trial. They included photographs of the victim's injuries, several electronic messages between the victim and defendant discussing the assaults, and a domestic violence workbook in which defendant had written about some of the assaults. Defendant was later convicted and sentenced as earlier described. At the sentencing hearing, the prosecution noted that four of defendant's other victims were present in the courtroom for sentencing. She also noted that these other incidents were discussed in the presentence investigation report. This appeal followed.

## II. ANALYSIS

Defendant argues that defense counsel was constitutionally ineffective for failing to call three witnesses whose testimony would have impeached the victim and established that defendant did not have violent propensities toward the victim. We disagree.

Whether a defendant has been deprived of the effective assistance of counsel presents a mixed question of fact and constitutional law. *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). "When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law." *People v Shaw*, 315 Mich App 668, 671-672; 892 NW2d 15 (2016). "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake." *Id*. at 672.

The United States and Michigan Constitutions guarantee criminal defendants the right to counsel, and this includes the right to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20. See *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Vaughn*, 491 Mich 642, 669; 821 NW2d 288 (2012) (recognizing that the right to counsel encompasses the right to the effective assistance of counsel). To establish an ineffective-assistance claim, "a defendant must show that (1) counsel's performance fell below an

objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Jurewicz*, 506 Mich 914, 915; 948 NW2d 448 (2020) (quotation marks and citations omitted).

There is a strong presumption that defense counsel provided effective assistance. *Strickland*, 466 US at 689. A reviewing court must entertain a range of possible reasons for defense counsel's act or omission. *Vaughn*, 491 Mich at 670. Defense counsel's failure to act does not fall below an objective standard of reasonableness when this Court can "conceive of a legitimate strategic reason" for the act or omission. *People v Clark*, 330 Mich App 392, 427; 948 NW2d 604 (2019). "Decisions regarding whether to call or question witnesses are presumed to be matters of trial strategy." *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).

In support of his claim of ineffective assistance of counsel, defendant has provided three affidavits, one from his father, another from a friend named Michael Jenkins, and a third from his brother. In the first, defendant's father averred that he was contacted by an investigator working for defendant's attorney, but was not asked to testify about the matters contained in the affidavit. He further attested that he lived in a pole barn on defendant's property, and had never had any indication that defendant was violent toward the victim. Defendant's father averred that he saw the victim punch, spit on, and push defendant many times. Jenkins stated that he was contacted by defendant's attorney or someone representing defendant, but was not asked to testify. He attested to hearing the victim state, among other things, that she intended to "ruin [defendant's] life, take his house and kick his father off the property . . . ." Defendant's brother likewise stated that he had not been asked to testify for defendant. He claimed to have seen the victim assault defendant two years prior. He also maintained that he had never seen defendant behave violently.

Defendant cannot overcome the presumption that counsel's decision to avoid calling these witnesses was sound trial strategy. See *Russell*, 297 Mich App at 716. As the prosecution correctly notes, some of the witnesses' proposed testimony would have been inadmissible at trial. For example, evidence of a person's character or character trait is generally inadmissible for the purpose of proving conformity on a particular occasion, MRE 404(a), and defendant does not identify an applicable exception. Any statements allegedly made by the victim to the proposed witnesses would additionally be inadmissible hearsay if presented for the truth of the matter asserted. See MRE 801(c). Further, to the extent that such statements might have been admissible under a hearsay exception or for purposes of impeachment, defense counsel may well have made a sound strategic decision not to call these witnesses in an effort to avoid opening the door to the further admission of evidence of specific instances of conduct by defendant. Had such evidence been admitted, it could have proved particularly damaging, given that the record indicates that defendant has been accused of domestic violence by others besides the victim. See MRE 404(a)(1); *Clark*, 330 Mich App at 427. Defendant has failed to establish that counsel's decision to not call the three proposed witnesses fell below an objective standard of reasonableness.

Even if we were to agree that defendant established the factual predicate for his claim, he cannot establish that he was prejudiced by defense counsel's decision. See *Jurewicz*, 506 Mich at 915. The victim's trial testimony was corroborated by the testimony of several other witnesses, including a neighbor, who testified that on one occasion she heard car alarms going off at defendant's house and a woman screaming "he's going to fucking kill me . . . ." The neighbor further testified to hearing defendant and the victim argue and scream at each other from her home

across the street on multiple occasions. Defendant's daughter additionally testified that she saw defendant push and shove the victim on several occasions. She further stated that she witnessed defendant pull the victim's hair and scream at her during an argument. The daughter was also present during the incident where defendant threw the victim in a pool. The evidence also includes numerous messages between the victim and defendant concerning defendant's abusive conduct, as well as statements written by defendant in a domestic violence workbook detailing specific acts of violence that he had committed. Given the breadth of the evidence in the record supporting defendant's guilt, it is unlikely that calling any of the now proffered proposed impeachment witnesses would have led to a more favorable outcome in this matter. For all of the foregoing reasons, defendant is not entitled to relief.

Affirmed.

/s/ Mark T. Boonstra
/s/ Anica Letica
/s/ Michelle M. Rick