# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

           Plaintiff-Appellee,

v

JAWON LAMAR MARBURY,

           Defendant-Appellant.

UNPUBLISHED
July 13, 2017

No. 331831
Wayne Circuit Court
LC No. 15-003895-02-FC

Before: O'BRIEN, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree felony murder, MCL 750.316(1)(b), first-degree home invasion, MCL 750.110a(2), and larceny in a building, MCL 750.360. Defendant was sentenced to life imprisonment for the first-degree murder conviction, 10 to 20 years' imprisonment for the first-degree home invasion conviction, and two to four years' imprisonment for the larceny in a building conviction. We affirm.

This case arises out of a home invasion resulting in the death of elderly homeowner Constance Retland. Retland was discovered shortly after her home was invaded on July 22, 2014, undressed, bloodied, and unable to speak, when her brother, Elbert Morris, visited her home to check on her. Morris called 911. As he waited for assistance, Morris noticed that both of Retland's televisions had been removed from her small downstairs apartment, and observed a bloody lamp on the floor. Retland was hospitalized as a result of her wounds, and remained hospitalized until she died, of blunt force injuries to her head and face, a month later.

Defendant and co-defendant, Jason Fulbright, had lived in an apartment located on the upper floor of Retland's home until a week before the home invasion, when Retland initiated an eviction proceeding to remove defendant and Fulbright from her home. Both defendant and Fulbright were arrested for Retland's murder, and were interrogated separately. Fulbright initially denied any knowledge of or participation in the crime, but eventually inculpated defendant, explaining that defendant had killed Retland while he and defendant were stealing televisions from Retland's home. Thereafter, Fulbright pleaded guilty to second-degree murder, MCL 750.317. Pursuant to the terms of his plea agreement, Fulbright testified for the prosecution at defendant's trial.

On appeal, defendant argues that he was deprived of his Sixth Amendment right to the effective assistance of counsel because defense counsel failed to object to the admission of

-1-

testimony regarding the consistency of Fulbright's out-of-court statements regarding defendant's participation in the home invasion and resulting homicide. We disagree.

Defendant failed to preserve the issue of ineffective assistance of counsel for appeal by timely moving for a new trial or a *Ginther*[1] hearing in the lower court. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). This Court's review of unpreserved ineffective assistance of counsel claims is limited to mistakes apparent on the record. *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). Whether a person has been denied effective assistance of counsel is a mixed question of law and fact. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d 342 (2004). A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo. *Id*.

"Effective assistance of counsel is presumed, and a defendant bears a heavy burden to prove otherwise." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010). To establish a claim of ineffective assistance of counsel, "a defendant must show (1) that defense counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that defense counsel's deficient performance so prejudiced the defendant that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *People v Fonville*, 291 Mich App 363, 382; 804 NW2d 878 (2011), citing *Strickland v Washington*, 466 US 668, 694; 104 S Ct 2052; 80 L Ed 2d 674 (1984). Defense counsel is afforded wide latitude on matters of trial strategy, *People v Unger*, 278 Mich App 210, 242; 749 NW2d 272 (2008), and this Court does not second guess defense counsel's strategic decisions regarding what evidence to present or how to question witnesses, *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004).

Defendant argues that defense counsel's performance fell below an objective standard of reasonableness because defense counsel failed to object to the prosecutor's elicitation of hearsay evidence during the testimony of Detective Scott Shea. Shea testified that he had interviewed defendant upon arrest and on the following day. According to Shea, defendant initially denied any participation in Retland's murder. However, defendant later told Shea that Fulbright alone had entered Retland's home on the day she was assaulted. After Shea interviewed Fulbright days later, Fulbright wrote and signed a statement providing an account of the home invasion and inculpating defendant. Specifically, Fulbright claimed that he had participated in the home invasion and assisted defendant in the removal of Retland's televisions, but had only witnessed as defendant violently assaulted Retland with a hammer. At trial, Shea testified regarding the information he obtained from Fulbright during that first interview. Then, the prosecutor elicited Shea's testimony regarding information Fulbright provided in a subsequent interview, specifically asking Shea whether Fulbright's statements had been consistent:

> [*The Prosecutor*]: And at some point later in the year about December did you have a chance to have further contact with Jason Fulbright?

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

-2-

[*Shea*]: Yes.

*The Prosecutor*: How does that happen?

*Shea*: I was advised by -- I don't know if it was you or your boss -- that there would be a deposing or debriefing with Mr. Fulbright regarding this case.

*The Prosecutor*: All right [sic]. And were you present for that?

*Shea*: Yes.

* * *

*The Prosecutor*: And the purpose of you meeting with Mr. Fulbright on that day was for what?

*Shea*: To get a more in depth statement about what had happened or what occurred to Miss Retland.

*The Prosecutor*: Okay.

I'm approaching you with what's been marked as People's -- admitted as People Eighteen. Do you recognize that?

*Shea*: Yes, this is the statement I took, a supplemental statement I took from Mr. Fulbright.

*The Prosecutor*: And when you spoke with Mr. Fulbright back in December did he tell you the same thing that he had told you back when he was first arrested?

*Shea*: Yes.

Defendant argues that Shea's statements confirming the consistency of Fulbright's out-of-court statements constituted inadmissible hearsay and improperly bolstered Fulbright's credibility. As such, defense counsel's failure to object was objectively unreasonable.

"Ineffective assistance of counsel cannot be predicated on the failure to make a frivolous or meritless motion." *People v Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003). Therefore, we must first determine whether an objection by defense counsel to Shea's testimony could have had merit.

Under MRE 801, " 'hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Shea's testimony regarding Fulbright's out-of-court statements was clearly offered for the truth of the matter asserted in Fulbright's "consistent" statements. Hearsay evidence is generally inadmissible. MRE 802; *People v Shaw*, 315 Mich App 668, 672-673; 892 NW2d 15 (2016). However, the rules of evidence provide a number of exceptions. MRE 801(d)(1)(B)

provides an exception to the rule against hearsay for a witness's out-of-court statement when the statement is "consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." To be admissible under MRE 801(d)(1)(B), the prior consistent statement must have been made "prior to the time that the supposed motive to falsify arose." *People v Jones*, 240 Mich App 704, 707; 613 NW2d 411 (2000) (citation omitted). Although defense counsel repeatedly implied, during his opening statement and through cross-examination, that Fulbright had a motive to fabricate his version of the incident, there was no suggestion that Fulbright's improper motive had coalesced only recently. The challenged testimony clearly pertained to a statement Fulbright provided after Fulbright was arrested, discovered that defendant had implicated him in Retland's murder, and provided an initial statement professing his innocence. Any motive to fabricate existed before both Fulbright's initial statement and his subsequent consistent statement, and would have persisted through trial. Therefore, the hearsay exception in MRE 801(d)(1)(B) does not apply. In its brief on appeal, the prosecution does not specifically challenge defendant's claim of inadmissibility, or cite any applicable hearsay exception. We conclude that Shea's testimony regarding Fulbright's prior consistent statements constituted inadmissible hearsay under our evidentiary rules.

Failure to object to inadmissible hearsay evidence is objectively unreasonable when "there [is] no basis for defense counsel to have reasonably concluded that he could obtain a tactical advantage by allowing the inadmissible hearsay testimony . . . ." *Shaw*, 315 Mich App at 676-677. However, "declining to raise objections . . . can often be consistent with sound trial strategy." *Unger*, 278 Mich App at 242.

Our review of the entire record reveals that defense counsel's theory of the case was that Fulbright, rather than defendant, had committed the charged crimes, and had inculpated defendant to avoid a harsher penalty for himself. Defense counsel suggested, in his opening statement and during his closing argument, that all of the evidence put forth by the prosecution suggested that Fulbright was the perpetrator of the charged crimes, and the only evidence of defendant's guilt was Fulbright's highly questionable version of the incident. Indeed, Fulbright admitted that he had lied to the police, initially denying any knowledge of or involvement in the charged crimes. Fulbright also admitted that he had been charged with the same crimes as defendant but had offered to testify against defendant in exchange for a reduced plea. On cross-examination, defense counsel meticulously questioned Fulbright regarding his first statement to the police, and pointed out that Fulbright's first handwritten statement lacked details included in later statements.

Throughout trial, defense counsel repeatedly called into question the timing of and motivation for Fulbright's statement inculpating defendant, pointing out that it was only after Fulbright was confronted with evidence of his fingerprint on the bloody lamp and defendant's accusation that he decided to admit that he was involved in the home invasion and deny involvement in Retland's death. In closing arguments, defense counsel again noted that the prosecutor's reliance on Fulbright's "consistent" narrative was misplaced, as Fulbright had initially lied to the police, claiming that he was not present for the home invasion or the homicide. Although defense counsel could have objected to Shea's testimony regarding the consistency of Fulbright's statements, such an objection would have been unnecessary. The jury was already aware that Fulbright had changed his story at least once since his initial interview,

and that Fulbright would have had a powerful motive to lie about the extent of his involvement in the crimes. It is therefore conceivable that defense counsel made a strategic decision not to raise a superfluous objection in order to avoid appearing confrontational, see *Matuszak*, 263 Mich App at 58, choosing instead to highlight his theory of the case through cross-examination and closing argument.

We do not substitute our judgment for that of counsel on matters of trial strategy, or use the benefit of hindsight to assess defense counsel's competence. *Unger*, 278 Mich App at 242-243. Further, the fact that defense counsel's chosen strategy ultimately proves unsuccessful does not render defense counsel's performance constitutionally defective. *People v Kevorkian*, 248 Mich App 373, 414-415; 639 NW2d 291 (2001). In its totality, the record suggests that defense counsel's failure to object to the admission of Fulbright's hearsay statements was consistent with defense counsel's theory of the case. Defendant has simply failed to overcome the strong presumption that trial counsel's performance was strategic. *Swain*, 288 Mich App at 643.

Defendant also suggests that defense counsel's failure to object to the prosecutor's "improper bolstering" of Fulbright's credibility during closing argument constituted ineffective assistance of counsel. Defendant failed to raise this issue in his statement of questions presented on appeal, and it is not properly before this Court. See *Unger*, 278 Mich App at 262 (declining to address an issue that was not stated in defendant's statement of questions presented). Regardless, we conclude that defendant's argument lacks merit.

"[A] prosecutor may not vouch for the credibility of his witnesses by implying that he has some special knowledge or their truthfulness." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). However, "a prosecutor may comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *Id*. Here, the case indisputably turned on the jury's assessment of witness credibility. During closing arguments, the prosecutor told the jurors that they should consider the testimony corroborating Fulbright's version of the incident and the consistency of Fulbright's narrative after his first written statement. The prosecutor never implied that she had special knowledge of either Fulbright's or Shea's truthfulness. Given that the prosecutor's comments during closing argument were proper, any objection by defense counsel would have been fruitless. As previously noted, "[a] defendant is not denied the effective assistance of counsel by counsel's failure to make a futile or meritless objection." *People v Johnson*, 315 Mich App 163, 175; 889 NW2d 513 (2016).

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Cynthia Diane Stephens