# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 18, 2017

Plaintiff-Appellee,

v

No. 324893
Ionia Circuit Court
LC No. 2013-015962-FC

STEVEN BRADLEY MACKENZIE,

Defendant-Appellant.

ON REMAND

Before: SAAD, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

On October 22, 2014, a jury convicted defendant of attempted murder, MCL 750.91, and aggravated domestic assault, MCL 750.81a(2). The trial court sentenced defendant to 11 to 40 years' imprisonment for attempted murder and 351 days in jail for aggravated domestic assault with credit for 351 days served. Defendant appealed his convictions and sentences to this Court, raising several issues including a claim of ineffective assistance of counsel. On April 26, 2016, this Court affirmed defendant's convictions and sentences, rejecting all of his claims on appeal.[1] Defendant applied for leave to appeal in our Supreme Court and on November 17, 2016, in lieu of granting leave to appeal, our Supreme Court vacated the part of this Court's judgment addressing defendant's claim of ineffective assistance of trial counsel with regard to trial counsel's handling of the withdrawal of defendant's pre-trial nolo contendere plea. *People v MacKenzie*, 500 Mich 889; 886 NW2d 709 (2016). Our Supreme Court remanded the matter to this Court and directed this Court to remand the case to the Ionia Circuit Court to conduct an evidentiary hearing pursuant to *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973). Our Supreme Court also directed this Court, at the conclusion of the *Ginther* hearing, to address defendant's ineffective assistance of counsel argument. Pursuant to that order, on December 19,

---

[1] *People v MacKenzie*, unpublished opinion per curiam of the Court of Appeals, issued April 26, 2016 (Docket No. 324893).

-1-

2016, this Court remanded the case to the Ionia Circuit Court for a *Ginther* hearing.[2] Following the *Ginther* hearing, the circuit court denied defendant's motion for a new trial, finding that defendant was not denied the effective assistance of counsel. For the reasons set forth in this opinion, we affirm.

## I. FACTS

This case arises from defendant's attack on his wife during the course of their divorce proceedings. Defendant initially entered a *Killebrew*[3] plea agreement on April 22, 2014, in which he agreed to plead nolo contendere to assault with intent to do great bodily harm less than murder (AWIGBH) in exchange for the prosecution dismissing the charges of attempted murder and aggravated domestic assault, and recommending that the trial court sentence defendant to time served.

After the plea was accepted and entered in the record, the victim made a statement at sentencing in which she requested that the trial court reject defendant's plea and sentence him to prison. She stated that she had read defendant's psychological evaluation and "it sent chills down [her] spine." The victim informed the trial court that she wanted defendant to receive mental health treatment because he was "a dangerous man."

Following the victim's statement, the trial court acknowledged the *Killebrew* agreement and stated, "[d]o the People have a position in this matter?" The prosecution responded as follows:

> When we fashioned this plea agreement entered we did receive the psychological evaluation that was presented from the defense. It clearly painted a different picture and some concerns which I concur are big concerns for this victim. So that did change her position. We totally understand where she's coming from with that. We do think there is a risk for him, so we completely understand what she's stating. We also understand since the time of the plea agreement, they are indicating he had another suicidal threat at the jail, just one week prior to the PSI investigation interview. These are all big red flags and big concerns for the Prosecution. These things were not in the picture at the time we made the plea agreement. We are okay with letting him withdraw his plea and going back.

Defense counsel responded:

> [ ] I'm very concerned now that the Prosecutor wants to withdraw this and I'm very concerned that [the victim] is trying to make sure that my client is punished.

\* \* \*

---

[2] *People v MacKenzie*, unpublished order of the Court of Appeals, entered December 19, 2016 (Docket No. 324893).

[3] *People v Killebrew*, 416 Mich 189; 330 NW2d 834 (1982).

A lot of people here are doing things that are just simply not right and if you think this report might influence you, I would suggest that you get all the psych reports that we have before deciding to take away this deal that we worked so hard to get. *Indeed if your Honor does not follow the Killebrew, my client will seek to have a full trial on this matter.* [Emphasis added.]

\* \* \*

I do not believe my client is a danger to anyone. If he is released today as the agreement with the People was, he will assist me as an accountant in trying to get everything organized for the divorce trial next week ... and that's what I'm requesting your Honor to do, stick to the deal.

The trial court and defense counsel then engaged in the following exchange:

*Trial Court.* In this matter, having had an opportunity to review and reflect on the presentence investigation report as well as the comments of the victim here today and Counsel ... this Court has to be concerned about safety and in light of—just studies show that risk escalates in the midst of a divorce proceeding—in light of the circumstances of this offense, I can't in good conscience, proceed with the agreement that had been reached. So I do afford Mr. MacKenzie the opportunity to withdraw his plea and will certainly afford him the right to a full trial in this matter. You've indicated he will exercise that right.

*Def. Counsel.* Okay. Your Honor ... when my client put his plea on the record and your Honor stated on the record that if for any reason, my client was not going to be released on the 17th that he would be afforded a P.R. bond. So we are requesting that ...

The case proceeded to trial and defendant was convicted and sentenced as set forth above. Thereafter, as explained above, this Court affirmed defendant's convictions and sentences; then, pursuant to our Supreme Court's order, this Court remanded the case to the trial court for a *Ginther* hearing. At the *Ginther* hearing, defendant argued that, after he entered the *Killebrew* agreement and was at the sentencing hearing, there should have been a direct inquiry on the record regarding whether he wished to withdraw his plea and go to trial. Defendant called Gregory Crockett, defendant's attorney at the sentencing hearing, to testify as a witness.

Crockett testified that he did not attempt to stop the sentencing hearing and ask defendant if he wanted to go to trial because he and defendant had previously discussed in great detail defendant accepting the plea. On June 12, 2014, defendant had told Crockett's associate, James Keathley, that he wished to withdraw his plea and go to trial. A motion was drafted, but was never filed. The next day, Crockett and defendant's former attorney, Steve Howard, went to the jail to talk to defendant. They described to him the hurdles that he would face at trial and what would happen if he was found guilty. Defendant eventually said that if he was going to get out of jail, he would accept the plea deal.

Crockett gave further reasons for not stopping the sentencing hearing to ask defendant if he wanted to go to trial or explain the sentencing ramifications of either accepting or

-3-

withdrawing the plea. Crockett had spoken with defendant in the back room before sentencing and at the jail a few days earlier, and Crockett believed that defendant was "just a hair away" from rejecting the plea. Defendant had said that his "gut" was telling him to go to trial. Based on Crockett's conversations with defendant, Crockett surmised that getting out of jail was most important to defendant, so Crockett knew that if defendant was not going to get out of jail that day, then he would not accept the trial court's sentence. Crockett had previously explained the sentencing guidelines to defendant. Defendant was hesitant to accept any plea and repeatedly said that he wanted to go to trial despite the possible prison exposure, which Crockett had communicated to him.

Crockett testified that he received the presentence investigation report (PSIR) before the sentencing hearing and reviewed it in detail with defendant. Defendant was aware that the sentencing guidelines were 10 to 23 months for AWIGBH, and defendant was outraged that the probation agent had recommended that the trial court exceed the *Killebrew* agreement and impose a sentence of 23 to 120 months. Defendant talked about withdrawing his plea at that point. Crockett believed that it was possible that the deal would fall through at the sentencing hearing because of numerous comments in the PSIR. Crockett discussed the possibility of the trial court exceeding the *Killebrew* agreement with defendant and defendant said that he would go to trial if the trial court exceeded the agreement. This discussion occurred either on June 13, 2014, or when Crockett visited defendant another time before the June 17, 2014 sentencing hearing. Just before the sentencing hearing, Crockett talked with defendant in the holding area to make sure he was going to go through with the sentencing and not demand a trial. Crockett did not ask the trial court what sentence it would impose because defendant was adamant that if he did not get the deal, then he wanted a trial. In August 2014, the prosecution offered defendant the same plea agreement, except with prison time, and defendant rejected it. Crockett did not know if he could say that defendant would have withdrawn his plea if the trial court exceeded the *Killebrew* agreement by one day or one week, but he believed defendant would have "[d]efinitely" withdrawn his plea if the agreement had been exceeded by one month.

Howard, defendant's attorney at the time the plea was entered, testified that on the day of the sentencing hearing, they discussed whether defendant wanted to take the deal and accept prison, and defendant rejected the deal outright. Howard did not recall if this occurred before or during the hearing. Howard testified that the deciding factor in defendant accepting the plea was that the sentence would be time served.

Lori Bonn, the probation/parole officer who prepared defendant's PSIR, testified that she recommended incarceration after her interview with defendant on May 22, 2014. During the interview, defendant was fixated on the victim and repeatedly stated that she was out to get him. He also stated that he should not have accepted the plea and that he regretted "being forced into a bad decision."

However, defendant argued that the trial court violated MCR 6.310(B)(2) and that he would have continued with the plea agreement if he had known the potential sentence. His attorney's failure to stop the trial court and make an inquiry was ineffective assistance of counsel. Defendant would have taken the plea if the sentence would have been within a reasonable range, but the range was unknown because there was no discussion. Defendant did not accept the later plea offers because of how the first one "fell apart so horribly."

-4-

The prosecution agreed that MCR 6.310(B)(2) was not strictly followed, but it argued that the judge and lawyers who failed to notice were not acting unreasonably. Defendant never wanted to accept a plea agreement and, according to his attorneys, the tipping point was that the agreement would allow him to get out of jail. The prosecution argued that defendant was aware that the probation agent was recommending that the agreement be exceeded and that a sentence at the top of the guidelines be imposed. Trial counsel's failure to stop the proceedings was reasonable and did not prejudice defendant because they knew what the trial court's sentence would be. The prosecution maintained that there was no indication that defendant never wanted to change his mind and he never took responsibility. Therefore, defendant was not prejudiced by trial counsel's conduct.

The trial court held that defendant was not denied the effective assistance of counsel. The court held that although the court rule was not strictly adhered to, Crockett "seemed to be very much in touch with his client." The trial court reasoned that defense counsel and defendant were not surprised that the Department of Corrections recommended that the *Killebrew* agreement not be followed. The trial court did not state a sentence on the record because it was considering something more than what had been recommended. The trial court did not articulate that on the record before Crockett made clear that defendant would not accept anything short of being able to leave the courthouse that day. It appeared to the trial court that they had conferred in advance and trial counsel knew his client's wishes. Based on Crockett's testimony that defendant had said several times that his "gut feeling" was to withdraw the plea and go to trial, and that Crockett had met with defendant before the sentencing hearing and another time, the trial court found that trial counsel's performance was not deficient. The trial court denied defendant's motion for a new trial.

II. ANALYSIS

Defendant argued that trial counsel was ineffective by failing to ask defendant whether he wished to withdraw his plea and go to trial after being informed of the sentence the trial court intended to impose.

> A defendant's ineffective assistance of counsel claim is a mixed question of fact and constitutional law. When reviewing an ineffective assistance of counsel claim, this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of law. The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake. [*People v Shaw*, 315 Mich App 668, 671-672; 892 NW2d 15 (2016) (citations and quotation marks omitted).]

"To establish ineffective assistance of counsel, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) that there is a reasonable probability that, but for counsel's error, the result of the proceedings would have been different." *Shaw*, 315 Mich App at 672. "Effective assistance of counsel is presumed, and [a] defendant bears a heavy burden of proving otherwise. A defendant must also overcome a strong presumption that his counsel's decisions were the result of sound trial strategy." *People v Johnson*, 315 Mich App 163, 174; 889 NW2d 513 (2016) (citations and quotation marks omitted). "In demonstrating prejudice, the defendant must show the outcome of

the plea process would have been different with competent advice." *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014) (citation and quotation marks omitted).

MCR 6.310(B)(2) governs the withdrawal of a plea before sentencing and provides as follows:

(2) the defendant is entitled to withdraw the plea if

(a) the plea involves an agreement for a sentence for a specified term or within a specified range, and the court states that it is unable to follow the agreement; *the trial court shall then state the sentence it intends to impose, and provide the defendant the opportunity to affirm or withdraw the plea*; or [Emphasis added.]

There is no dispute that the trial court did not strictly follow MCR 6.310(B)(2) at the sentencing hearing. The trial court indicated that it would not follow the sentence agreed to in the plea agreement (time served), stating "I can't in good conscience, proceed with the agreement that had been reached." The trial court failed to "state the sentence it intend[ed] to impose" and "provide the defendant the opportunity to affirm or withdraw the plea." MCR 6.310(B)(2)(a). This amounted to error. See *People v Franklin*, 491 Mich 916; 813 NW2d 285 (2012). Counsel should have been aware of the requirements of the court rule and requested that the court adhere to the rule. Nevertheless, even assuming that counsel's performance in this respect amounted to deficient performance on an objective standard of reasonableness, defendant cannot show that the deficient performance resulted in prejudice.

In *Franklin*, 491 Mich at 916, our Supreme Court held that a trial court's failure to adhere to MCR 6.310(B)(2) did not warrant reversal under *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999), explaining:

even if the error here was plain and resulted in outcome determinative prejudice, this Court still "must exercise its discretion in deciding whether to reverse." [] Under these circumstances, where the defendant did not just fail to object at sentencing, but also failed to object during the subsequent trial and waived his right to a jury trial, this Court is exercising its discretion in favor of not reversing the defendant's convictions. Any other conclusion would be contrary to the rule that defendants cannot harbor error as an appellate parachute. [*Franklin*, 491 Mich at 916 (quotations and citations omitted).]

We find our Supreme Court's holding in *Franklin* both instructive and controlling. Here, like in *Franklin*, the unique facts and circumstances in this case show that, but for counsel's deficiency in failing to raise an objection, the outcome of the plea proceeding would not have been different. *Shaw*, 315 Mich App at 672. Specifically, trial counsel had previously consulted with defendant and was aware that defendant would not accept anything but the original agreement, under which he would serve no further jail time. At the *Ginther* hearing, Crockett testified that based on his prior discussions with defendant, he knew that if defendant was not going to get out of jail that day, he would not accept the trial court's sentence. Crockett testified that defendant had said that if the trial court exceeded the agreement, then he would go to trial. Crockett could not say that defendant would not have accepted one day or one week of jail time,

but he testified that defendant would have definitely withdrawn his plea if the sentence was for one month and the probation agent's recommendation was for a minimum sentence of 23 months. There is no indication that the trial court would have sentenced defendant to only one day or one week of jail time. Thus, even if Crockett had asked the trial court to state the sentence that it intended to impose and consulted with defendant, the record shows that the outcome would have been the same—defendant would have rejected the plea and gone to trial. See *Douglas*, 496 Mich at 592. Furthermore, while defendant's attorney argued at the *Ginther* hearing that defendant would have accepted a reasonable sentence, the trial court found Crockett's testimony to be more credible. Crockett testified that defendant was adamant that he would not accept a prison sentence. Moreover, defendant subsequently rejected offers for the same plea, except with prison time. Thus, under the facts and circumstances of this case, defendant has not shown that, but for counsel's failure to request the trial court state its intended sentence on the record, the result of the plea process would have been different. *Id*.

The record further reveals that after informing trial counsel of his decision not to accept the plea, defendant never made an inquiry about the possibility of a plea. Thus, as was the case in *Franklin*, defendant waited until after his trial and after he was sentenced to claim ineffective assistance of counsel. Review of the facts and findings in this case coupled with our review of relevant case law, leads this Court to conclude, in accordance with our Supreme Court's holding in *Franklin*, that we cannot condone the harboring of error as an appellate parachute. *Franklin*, 491 Mich at 916.

Additionally, we view the holding in *Franklin* to be in accord with the Supreme Court's decision in *Lafler v Cooper*, 566 US 156; 132 S Ct 1376; 182 L Ed2d 398 (2012). In *Lafler*, the Supreme Court stated, in relevant part, that while "[d]efendants have a Sixth Amendment right to counsel…that extends to the plea-bargaining process," "[t]he question for this Court is how to apply *Strickland*'s prejudice test where ineffective assistance of counsel results in a rejection of the plea offer and the defendant is convicted at the ensuing trial. *Lafler*, 566 US at 162-163. To prevail on a claim of ineffective assistance of counsel, a defendant must meet two criteria: first, he must "show that counsel's performance was deficient. This requires showing that counsel made errors so serious that he was not performing as the " 'Counsel' guaranteed by the Sixth Amendment." *Strickland*, 466 US at 687. Second, the defendant must show that deficient performance was prejudicial. *Id*. Determinations of prejudice in the context of plea negotiations was set forth in *Hill v Lockhart*, 474 US 52, 59; 106 S Ct 366; 88 L Ed2d 203 (1985) wherein the Court stated: "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Here, defendant has failed to make a showing that counsel's performance affected the outcome of the plea process. The testimony revealed, and the trial court found that defendant would not accept any plea which required him to serve any additional jail time. Our review of the record leads us to also conclude that defendant would not have accepted any plea which required him to serve additional jail time. Therefore, even presuming that counsel was ineffective by failing to inquire of the trial court what sentence it would have given defendant, we cannot find that defendant suffered prejudice under the facts specific to this case. Accordingly, defendant is not entitled to relief.

Affirmed.

/s/ Henry William Saad
/s/ Stephen L. Borrello
/s/ Michael F. Gadola