*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRANCE DASHAWN-LOVETT BANKS,

        Defendant-Appellant.

UNPUBLISHED
February 10, 2025
10:36 AM

No. 367331
Wayne Circuit Court
LC No. 21-007118-01-FC

Before: BOONSTRA, P.J., and K. F. KELLY and YOUNG, JJ.

PER CURIAM.

Defendant, Terrance Dashawn-Lovett Banks, appeals as of right his bench-trial convictions of four counts of third-degree criminal sexual conduct (CSC-III), MCL 750.520d(1)(a) (sexual penetration with a victim at least 13 and less than 15 years of age), and one count of fourth-degree criminal sexual conduct (CSC-IV), MCL 750.520e(1)(a) (sexual contact with a victim at least 13 and less than 15 years of age). The trial court sentenced Banks as a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 25 to 45 years' imprisonment for each CSC-III conviction and time served for the CSC-IV conviction. On appeal, Banks argues he is entitled to a new trial or resentencing because: (1) he was denied his constitutional right to a jury trial when he did not voluntarily and knowingly waive this right; (2) the trial court erred by admitting hearsay statements; (3) defense counsel provided ineffective assistance by failing to object to the admission of the hearsay statements; and (4) the 25-year mandatory minimum sentences imposed by the trial court, although within-guidelines, were disproportionate and constituted cruel or unusual punishment. We affirm.

## I. BACKGROUND

Banks and the victim first met and communicated on the social media platform, Snapchat. Banks was a resident of Michigan, and the victim lived with her grandmother in Ohio. On May 14, 2020, Banks picked up the victim and drove her to a Quality Inn & Suites hotel (the hotel) in Michigan. While the victim was showering, Banks touched her buttocks with his hands and penis. Over the next two days, there were at least four incidents when Banks had sexual intercourse with

-1-

the victim, putting his penis inside her vagina. At the time these incidents occurred, the victim was 13 years old.

The victim and Banks left the hotel after two days. Banks then told the victim he had nowhere for them to stay, and they both slept in Banks' car. A few days later, Banks' mother, who worked with Banks, eventually noticed the victim in Banks' car parked at their place of employment. Banks' mother drove the victim to the police station, where the victim met with law enforcement, and an investigation followed.

Banks was charged with five counts of CSC-III, two counts of CSC-IV, and notified he was being charged as a fourth-offense habitual offender. Specifically, Counts 1, 2, 3, and 4 alleged "penis in genital opening" and Count 5 alleged "cunnilingus." Counts 6 and 7 alleged sexual contact. Banks waived his right to a jury trial, and a bench trial took place. Banks moved for a directed verdict, which was granted as to Count 5 only. The trial court found Banks guilty of four counts of CSC-III (Counts 1, 2, 3, and 4), guilty of one count of CSC-IV (Count 6), and not guilty of the other count of CSC-IV (Count 7). Banks was sentenced to 25 years' imprisonment. Banks now appeals.

## II. ANALYSIS

## A. JURY TRIAL WAIVER

Banks contends the purported waiver of his right to a jury trial was invalid, entitling him to a new trial. We disagree.

This issue is unpreserved so we review it for plain error. *People v Lafey*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 361936); slip op at 5. To establish plain error, a defendant must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). The third requirement generally requires a showing of prejudice, meaning that the error affected the outcome of the lower court proceedings. *Id*. "The adequacy of a jury trial waiver is a mixed question of fact and law. Our review of the interpretation of court rules is de novo." *Lafey*, ___ Mich App at ___; slip op at 5 (quotation marks and citation omitted).

A defendant "has a constitutionally guaranteed right to a jury determination that he is guilty beyond a reasonable doubt. However, with the consent of the prosecutor and the approval of the trial court, a defendant may waive his right to a jury trial." *Id*. (quotation marks and citations omitted); see also US Const, Am VI; Const 1963, art 1, § 20. "In order for a jury trial waiver to be valid, however, it must be both knowingly and voluntarily made. . . . By complying with the requirements of MCR 6.402(B), a trial court ensures that a defendant's waiver is knowing and voluntary." *People v Cook*, 285 Mich App 420, 422; 776 NW2d 164 (2009). MCR 6.402 states:

> (A) Time of Waiver. The court may not accept a waiver of trial by jury until after the defendant has been arraigned or has waived an arraignment on the information, or, in a court where arraignment on the information has been eliminated under MCR 6.113(E), after the defendant has otherwise been provided with a copy of the information, and has been offered an opportunity to consult with a lawyer.

(B) Waiver and Record Requirements. Before accepting a waiver, the court must advise the defendant in open court of the constitutional right to trial by jury. The court must also ascertain, by addressing the defendant personally, that the defendant understands the right and that the defendant voluntarily chooses to give up that right and to be tried by the court. A verbatim record must be made of the waiver proceeding.

"Before the adoption of MCR 6.402, a waiver of the right to a jury trial was required to be in writing pursuant to MCL 763.3(1). However, the adoption of MCR 6.402 superseded the statute's writing requirement." *Lafey*, ___ Mich App at ___; slip op at 6.[1] "Complying with the requirements of MCR 6.402(B) creates a presumption that a defendant's waiver was voluntary, knowing, and intelligent." *Id*. "If a defendant's waiver was otherwise knowingly, voluntarily, and intelligently made, reversal will not be predicated on a waiver that is invalid under the court rules . . . because courts will disregard errors that do not affect the substantial rights of a defendant." *Id*. "[T]he dispositive inquiry is whether the defendant understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge." *Id*. "When these requirements are not met, constitutionally invalid jury waiver is a structural error that requires reversal." *Id*.

A review of this record shows that Banks' wavier of his right to jury trial was voluntary, knowing, and intelligent. After ascertaining Banks' goals in a private meeting, defense counsel requested a bench trial on behalf of Banks. Initially, the trial court asked defense counsel to voir dire Banks, and the following colloquy occurred:

> *Defense Counsel*: [Y]ou and I had a discussion . . . about proceeding to trial, correct?
>
> *Banks*: Say we what? We have a discussion about what?
>
> *Defense Counsel*: About your request to proceed to trial, correct?
>
> *Banks*: Yes.
>
> *Defense Counsel*: And you indicated, you wanted to reject that [plea] offer . . . correct?
>
> *Banks*: Yes.
>
> *Defense Counsel*: And that you wanted to have your trial, and . . . you want to waive your [c]onstitutional rights to a jury, and have the [j]udge hear your case, correct?

---

[1] This precludes relief for Banks on his argument that his waiver was invalid because it was not in writing. That argument is not addressed further in this opinion.

*Banks*: I can't hear you.

*Defense Counsel*: You want . . . to waive your right to have a jury, and if the [p]rosecutor agrees, and the [j]udge agrees, then the [j]udge will hear your case, is that what you want?

*Banks*: You say, waive my rights, and then say somethin[g] about the [p]rosecutor agreein[g].

I know, I told you I want a bench trial.

*Defense Counsel*: Right.

That's what I'm asking.

You want a bench trial, and there will be no jury, correct?

*Banks*: Correct.

*Defense Counsel*: Has anybody forced you, or threatened you . . . to come to that conclusion?

*Banks*: No.

*Defense Counsel*: Has anyone promised you anything for you to . . . make that decision?

*Banks*: No.

*Defense Counsel*: Are you doing that freely and voluntarily?

*Banks*: Yes.

The trial court also asked Banks questions and the following colloquy occurred:

*The Court*: [D]o you understand that you have a [c]onstitutional right to have your case decided by a jury?

*Banks*: Yes, I understand that.

*The Court*: And you understand that you can waive that right[?]

And if you do, that . . . the Court, which is me, . . . I would decide . . . whether . . . you are . . . not guilty, or guilty of the charges against you.

Do you understand that?

*Banks*: Yes, I understand that.

-4-

Is this . . . [j]udge speaking, or my attorney?

*The Court*: Yes.

I'm Judge Kevin J. Cox, and I'm the one that's now asking you questions.

*Banks*: Yes, Your Honor, . . . I understand.

*The Court*: All right.

So, you wish to waive your right to a jury trial, and you want, . . . myself, . . . Judge Cox, to determine your guilt or innocence.

Is that [a] true statement?

*Banks*: Yes, sir.

*The Court*: All right.

Based on the record . . . the Court . . . does note that [Banks] was previously arraigned and properly advised of his right to a jury trial.

[Banks] has had an opportunity to discuss this matter with his attorney, and has waived his right to a jury trial, in open court, as required by law.

Accordingly, the Court is going to sign an order[2] memorializing . . . the waiver of the right to a jury trial, and [Banks'] election to be tried . . . without a jury. [Footnote added.]

Banks now argues that his plea was unknowing or involuntary because it occurred on Zoom and he did not understand the rights he was giving up. This argument lacks merit.

Banks requested a bench trial after discussing the matter with defense counsel. Specifically, when defense counsel was questioning Banks about his understanding of his rights, Banks clearly stated: "I know, I told you I want a bench trial." Before accepting Banks' waiver, the trial court informed Banks of his constitutional right to choose a jury trial in open court. Banks affirmed he understood this right. The trial court explained this right can be waived and, if so, the case would be tried by the trial court. Banks then affirmed he understood the consequences of waiving his right to a jury trial. Further, defense counsel already asked Banks if he was forced or threatened, and Banks replied: "No."

The record does reflect, though, that at times Banks could not hear, and thus not understand, aspects of the waiver. From the outset, Banks indicated his ability to hear was "choppy." At one point, Banks asked who was speaking, prompting the trial court to clarify the court was asking the

---

[2] Although the register of actions states the trial court entered an order for the "Waiver of Trial By Jury," the lower court file does not contain such an order.

questions. However, when Banks did not understand a question, the question was repeated, or, when Banks had a question for defense counsel or the trial court, it was answered. On the basis of the questioning by defense counsel and the trial court, it is evident Banks understood his right to a jury trial and voluntarily waived it. Banks does not dispute he requested a bench trial, nor does he dispute that he consented to the waiver hearing itself taking place via Zoom.[3] The trial court fully complied with the procedures mandated under MCR 6.402(B), creating a presumption that the waiver "was voluntary, knowing, and intelligent." *Id*. (quotation marks and citation omitted). Banks fails to rebut this presumption and thus, the trial court did not commit plain error by accepting the waiver.

## B. HEARSAY STATEMENTS

Banks contends the victim's statements made to a sexual assault nurse examiner (SANE), Patrice Terrell, during the sexual assault forensic examination were hearsay and inadmissible under MRE 803(4) because the examination was conducted solely for the police investigation and not for seeking a medical diagnosis or treatment. We disagree.

### 1. ISSUE PRESERVATION AND STANDARDS OF REVIEW

"To preserve an evidentiary issue for review, a party opposing the admission of evidence must object at trial and specify the same ground for objection that it asserts on appeal." *People v Aldrich*, 246 Mich App 101, 116; 631 NW2d 67 (2001). Because there was no objection to the SANE testimony or about the interview with the SANE, the issue is unpreserved. *Id*. "We review unpreserved errors for plain error affecting substantial rights." *People v Chelmicki*, 305 Mich App 58, 62; 850 NW2d 612 (2014). To establish plain error, a defendant must show that (1) error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error affected substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). The third requirement generally requires a showing of prejudice, meaning that the error affected the outcome of the lower court proceedings. *Id*. Once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (quotation marks and citation omitted).

### 2. MOST OF THE SANE TESTIMONY WAS ADMISSIBLE EVIDENCE

The record established Banks had intercourse with the victim at least once daily from May 14, 2020, through May 16, 2020. On May 18, 2020, Terrell evaluated the victim. On the basis of the statements made by the victim during the examination, Terrell testified as follows:

> Patient stated, we . . . were talking on Snapchat.

---

[3] At the start of the hearing, the trial court indicates that defense counsel received Banks' consent to have this proceeding via Zoom.

He text[ed] me Wednesday, saying he was going to be here for his daughter's birthday.

He asked, do you want me to come and get you?

When we got there, I packed my stuff, and I walked up the street, to get in his car.

We w[ere] drivin[g] on the highway, and he threw my phone out [of] the window.

He said, we [are] [going to] stay at a hotel.

We got there, and I thought I was [going to] take a showe[r] by myself.

But . . . he got in there with me.

He was rubbin[g] on my vagina, and my body.

He insisted to have sex.

I said, no.

He forced me, he grabbed my legs, he put his dick inside me.

He was rubbin[g] on my vagina, and my body.

He insisted to have sex with me.

I said, no.

He forced me.

He grabbed my legs.

He put his dick inside me.

[W]e do have the patient clarify, vagina.

He did multiple rounds.

He took a shower.

I laid down.

The next day, we had sex in the morning.

He put his dick inside me.

[P]atient clarified, vagina, again.

He got dressed, and went to the phone store, and got me a new phone.

Then he sa[id], he had to work the next day.

We go back to the hotel.

We had sex again.

He put his dick inside me.

[P]atient clarified vagina.

We go to sleep, and wake up, and had sex again.

Then, we took a shower.

We slept in the car, yesterday.

Then when we went to Metro store to connect to the wi-fi, so I could have some internet, while he was at work.

It didn't work.

We went to his sister['s] house.

[H]e went to work, while I'm in the car, and [he] took my phone.

He came out from his job, to the car.

He never came back with my phone.

He said, his mom needed to use the car.

His mom came out, and got in the car.

I said, hello.

She drove me to the Police station.

He told her he picked me up, because some guys w[ere] chasin[g] me.

Terrell asked the victim questions, including if she was pregnant or had a sexually transmitted disease. Terrell stated it was important to obtain the victim's medical history because "it helps guide our medical diagnosis, and treatment, for the patient." Further, asking about the assault helped diagnose and treat the victim, as well as know what type of evidence to collect. Terrell observed no injuries to the victim and the victim did not have any physical complaints. As outlined, the victim shared information, including the time frame and location of the incident, as

well as Banks' name. Terrell discovered the victim received prophylactic medications for sexually transmitted diseases. Based on the information gathered, Terrell collected DNA from the victim, including oral swabs, anal swabs, swabs of the lips and mouth, swabs of the arms, swabs of the labia majora and labia minora, and a vaginal cervical swab.

Terrell's testimony, as a general matter, is repeating statements made by another to assist the prosecutor in meeting their burden of proof. This is textbook hearsay. Hearsay is "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *People v Shaw*, 315 Mich App 668, 672-673; 892 NW2d 15 (2016) (quotation marks and citation omitted); see also MRE 801(c). "Unless an exception exists, hearsay is inadmissible." *Shaw*, 315 Mich App at 673; see also MRE 802.

MRE 803(4) provides an exception to the rule against hearsay and states:

> **(4) Statement Made for Purposes of Medical Treatment or Diagnosis in Connection with Treatment.** A statement that:
>
> (A) is made for—and is reasonably necessary to—medical treatment or diagnosis in connection with treatment; and
>
> (B) describes medical history, past or present symptoms or sensations, their inception, or their general cause.

Here, the examination was conducted by Terrell, a SANE at Avalon Healing, when the victim was already receiving care in the emergency room at Children's Hospital of Michigan in Detroit (the hospital). The hospital referred the victim to Terrell. Contrary to Banks' assertion, even though the examination occurred after the victim spoke to police and might have been conducted "at least in part to investigate an alleged sexual assault, this factor is not dispositive." *People v Duenaz*, 306 Mich App 85, 96; 854 NW2d 531 (2014).

Banks contends the facts of this case are similar to those presented in *Shaw*, 315 Mich App at 671-676. In *Shaw*, this Court held the complainant's statements to the medical provider during the examination were inadmissible under MRE 803(4) because the complainant was not seeking medical treatment and the examination occurred seven years after the last incident of abuse, "thereby minimizing the likelihood that the complainant required treatment." *Id*. at 675. The facts presented in *Shaw* are distinguishable from those presented in this case, however, because the victim sought medical treatment at the hospital and underwent the examination only two days after the last alleged incident of sexual assault. Based on the record, the victim's statements were reasonably necessary for medical treatment and diagnosis by Terrell and were admissible under MRE 803(4).

As to the portions of the testimony that were related to medical treatment, the evidence was admissible. However, some portions of the testimony were hearsay that did not fall into the exception under MRE 803(4) and we address that portion of the testimony next.

3. SOME OF THE SANE TESTIMONY MAY BE HEARSAY BUT IT DOES NOT AMOUNT TO PLAIN ERROR.

In addition to the statements regarding the victim's medical treatment, during the examination, the victim also shared additional facts with Terrell, such as how she met Banks, was picked up by Banks and taken to the hotel, Banks' disposal of her cell phone and how he bought her a new one, and how the victim stayed in Banks' truck while he worked. These statements regarding the victim's history were not related to her medical treatment and were inadmissible if offered for the truth of the matter asserted. Instructive on this point is *People v Thorpe*, 504 Mich 230; 934 NW2d 693, 709 (2019). In *Thorpe*, our Supreme Court examined two consolidated cases: *People v Thorpe* and *People v Harbison*, reversing the trial court's decisions to allow certain inadmissible statements at trial. In *Thorpe*, the Supreme Court held that on appeal, Thorpe had "shown that it [wa]s more probable than not that a different outcome would have resulted without [expert witness] Cottrell's testimony that children lie about sexual abuse 2% to 4% of the time." *Id*. at 259. It found that "one might reasonably conclude on the basis of Cottrell's testimony that there was a 0% chance [the victim] had lied about sexual abuse. In so doing, Cottrell for all intents and purposes vouched for [the victim's] credibility." *Id*. Likewise, in that case, the Court found that Harbison established a plain error that affected his substantial rights when a testifying doctor stated that the victim "suffered 'probable pediatric sexual abuse'. . . . based solely on her own opinion that [the victim's] account of the assaults was "clear, consistent, detailed and descriptive." *Id*. at 261.

The Court reasoned, "an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the conclusion [is] nothing more than the doctor's opinion that the victim had told the truth." *Id*. (internal quotation marks omitted). Here, though portions of the SANE testimony may be inadmissible, they are not the same as a medical expert opining that the victim told the truth. These statements are distinguishable from those made in *Thorpe* and *Harbison*, as Terrell was not giving a stamp of approval to the victim's testimony, but was repeating what the victim said. It was not plainly erroneous for the trial court to admit these portions of Terrell's testimony.

Banks also contends defense counsel was ineffective for not objecting to Terrell's testimony. We disagree.

"Our review is limited to errors apparent on the record." *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008). "The right to counsel guaranteed by the United States and Michigan Constitutions, US Const Am VI; Const 1963, art 1, § 20, is the right to the effective assistance of counsel." *Shaw*, 315 Mich App at 672. "A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel." *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). "First, the defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id*. at 290. See also *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984), and *People v Pickens*, 446 Mich 298, 338; 521 NW2d 797 (1994). "In doing so, the defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy." *Armstrong*, 490 Mich at 290 (footnote and citation omitted). "Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable." *Id*., see also *Strickland*, 466 US at 694-696. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Ackley*, 497 Mich 381, 389; 870 NW2d 858 (2015) (quotation marks and citation omitted). The second prong "does require a showing of prejudice[.]" *People v Randolph*, 502 Mich 1, 14; 917 NW2d 249 (2018).

Most of the victim's statements to Terrell were admissible under MRE 803(4) and an objection by defense counsel would have been futile. Defense counsel was not ineffective for failing to raise a futile objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel."). As for the additional statements, Banks has not shown that, but for counsel's deficient performance (i.e. objecting to the admission of these statements), a different result at trial would have been reasonably probable. Because of the evidence presented at trial, including detailed victim testimony as well as DNA evidence to support Banks' conviction, it cannot be said that the outcome of the case would have differed.

## C. SENTENCING

Banks contends the trial court's mandatory minimum sentences of 25 years was disproportionate and/or constitutionally infirm. We disagree with both contentions.

Regarding Banks' proportionality argument, "[a] sentence that adheres to the guidelines' recommended range is reviewed for proportionality." *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality . . . which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender. *People v Purdle (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 353821); slip op at 5. The sentencing court abuses its discretion if the sentence imposed is disproportionate to the seriousness of the circumstances involving the offense and the offender. *Id*.

Banks was charged as a fourth-offense habitual offender and provided notice of the mandatory minimum sentence of 25 years under MCL 769.12(1)(a). At sentencing, defense counsel did not contest Banks' habitual status or that the guidelines minimum sentence range was 99 to 320 months. The trial court sentenced Banks to the 25-year mandatory minimum sentence for each CSC-III conviction, recognizing it "must sentence [Banks] to a minimum [25-year] sentence, under the circumstances." In so doing, the trial court sentenced Banks within his guidelines range, as a 25-year sentence is 300 months. Thus, Banks' sentence is presumptively proportionate. "With regard to a within-guidelines sentence, there is a nonbinding presumption of proportionality. And, although a within-guidelines sentence may be disproportionate or unreasonable, the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Purdle (On Remand)*, ___ Mich App at ___; slip op at 5 (quotation marks and citations omitted).

As the trial court's statement reflects, the statutorily required minimum sentence here curbed the trial court's discretion to consider the guidelines and fashion a sentence based solely on the "seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 474; 902 NW2d 327 (2017) (quotation marks and citation omitted). The mandatory minimum sentence barred the trial court from considering any sentence from 99 months (8.25 years) to 300 months (25 years). However, that fact alone does not indicate that a sentence is disproportionate. Banks has not presented any information about him or his offense that would allow him to overcome the presumption of proportionality. Plus, "the premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and

the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Cases like *Babcock* then, seem to support a sentence at the top of the guidelines range, as here. Banks did not overcome his burden of establishing the within-guidelines sentence is unreasonable or disproportionate.

Banks then argues that his sentence is unconstitutionally cruel or unusual, relying on our Supreme Court's decisions in *People v Bullock*, 440 Mich 15; 485 NW2d 866 (1992), and *People v Lorentzen*, 387 Mich 167; 194 NW2d 827 (1972). We disagree. To begin, a proportionate sentence does not constitute cruel or unusual punishment. *People v McFarlane*, 325 Mich App 507, 538; 926 NW2d 339 (2018). And, binding precedent has already addressed a similar argument, explaining:

> Both *Lorentzen* and *Bullock* dealt with penalties imposed for nonviolent drug crimes, and the penalties in question did not require a showing of previous criminal activity. By contrast, MCL 769.12(1)(a) only applies to individuals convicted of a serious felony who have previously been convicted of three or more felonies. Thus, we find [the] defendant's comparison of the present case to the circumstances in *Lorentzen* and *Bullock* unpersuasive. [*Burkett*, 337 Mich App at 639 (citations omitted).]

Similarly, here, Banks was convicted of three prior felonies. Despite the trial court's obligation to impose the mandatory minimum sentence, the trial court nevertheless recognized the severity of Banks' actions. The trial court emphasized Banks engaged in multiple acts of sexual intercourse with a "young girl" after bringing her to Michigan from Ohio.

Banks argues that compared to other states, Michigan's habitual offender statute is severe. Banks recognized a difference in California's "Three Strikes Law," for example, which mandates one of a defendant's prior convictions to be violent in nature. Banks further contends, under MCL 769.12(1)(a), trial courts lack the ability to consider the circumstances surrounding Banks' prior convictions, unlike in California. However, "these differences do not compel the conclusion that MCL 769.12(1)(a) is unconstitutional, and Banks has not pointed to any other states' habitual-offender schemes that would indicate that the penalty imposed by MCL 769.12 is abnormally harsh in comparison." *Burkett*, 337 Mich App at 640.

At bottom, Banks failed to indicate how the trial court's sentence was abnormally harsh, and Banks' comparison of Michigan's penalty to the penalty imposed in California does not support an "attack on the constitutionality of Michigan's sentencing statute." *People v Benton*, 294 Mich App 191, 206-207; 817 NW2d 599 (2011). Banks cannot establish the trial court committed plain error at sentencing.

## III. CONCLUSION

Banks did not establish plain error affecting his substantial rights from the trial court's acceptance of the waiver to a jury trial. Banks also did not establish plain error affecting his substantial rights from the admission of the victim's statements during the examination by SANE personnel. Any error by defense counsel by not objecting to the victim's statements as read by Terrell, was harmless and did not amount to ineffective assistance of counsel. We affirm Banks'

convictions. Further, the trial court did not abuse its discretion by imposing a mandatory minimum sentence of 25 years for each CSC-III conviction. Because Banks' sentence did not violate his guarantee against cruel or unusual punishment, he is not entitled to resentencing.

Affirmed.

/s/ Mark T. Boonstra
/s/ Kirsten Frank Kelly
/s/ Adrienne N. Young