*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
July 18, 2025
1:24 PM

Plaintiff-Appellee,

v

No. 369089
St. Clair Circuit Court
LC No. 2023-000763-FH

WOODROW ANTHONY MILLER,

Defendant-Appellant.

Before: GADOLA, C.J., and WALLACE and ACKERMAN, JJ.

PER CURIAM.

Defendant, Woodrow Anthony Miller, appeals by right his convictions of delivery/manufacture of methamphetamine, MCL 333.7401(2)(b)(i), second or subsequent offense, MCL 333.7413, two counts of being a felon in possession of a firearm, MCL 750.224f(1)[1], one count of being a felon in possession of ammunition, MCL 750.224f(6), and maintaining a drug house, MCL 333.7405(d), second or subsequent violation, MCL 333.7413. We vacate defendant's convictions and remand for a new trial.

## I. FACTS

In 2023, defendant was under investigation for dealing methamphetamine after the St. Clair County Sheriff's Department received multiple tips from confidential informants. Defendant was residing above the garage at his mother's house. A drug task force, comprised of law enforcement officers from the St. Clair County Sheriff's Department, Port Huron Police, Marysville Police, and United States Customs and Border Patrol, conducted surveillance of the residence and obtained a search warrant. The day of his arrest, defendant left the home on a motor bike. When the bike broke down about halfway down the street, the task force arrested defendant and searched his person, finding about 8.7 grams of methamphetamine. The drug task force then executed the search warrant and searched defendant's room above the garage. When the police entered the

---

[1] This statute has been amended since defendant was convicted. All statutes cited in this opinion refer to the version in effect at the time defendant was found guilty on October 11, 2023.

room, they found a revolver lying on the bed in plain view. The police also found a shotgun, shells, ammunition, a digital scale, plastic baggies, and two glass jars containing respectively 29.8 grams and 50.2 grams of methamphetamine.

Defendant was first represented by a public defender in this case. Defendant did not appear at a plea hearing scheduled for August 28, 2023, so a bench warrant was issued for his arrest. About one month before trial, defendant retained attorney Maurice Davis. On September 12, 2023, attorney Davis appeared for the first time at defendant's bench warrant arraignment. On October 2, 2023, attorney Davis did not appear for defendant's plea hearing. Defendant was present because he was in jail for failing to appear at the previously scheduled plea hearing. The trial court conducted the hearing without defense counsel present. Defendant did not plead guilty and expressed his intent to go to trial.

On October 7, 2023, three days before trial, attorney Davis filed a motion to withdraw as counsel, claiming there had been a significant breakdown of the attorney-client relationship. The trial court heard arguments on the motion the morning of trial. The trial court found that defendant was unsatisfied because defense counsel did not file a pretrial motion to suppress based on the allegedly forged search warrant. However, defense counsel did not believe the motions were appropriate. Also, the trial court stated that defendant was in court for the plea hearing a week prior and expressed no dissatisfaction with defense counsel's representation. The trial court denied the motion to withdraw, finding that the differences in opinion regarding pretrial motions did not constitute a breakdown of the attorney-client relationship.

Defendant was convicted following a jury trial. Before sentencing, defendant's friend sent a letter to the trial court judge on defendant's behalf claiming that the magistrate's signature on the search warrant was forged due to the "clear discrepancies" between the signature on the warrant and the signature on a pretrial release order. The letter requested the trial court review the enclosed evidence and dismiss the case against defendant. Defendant made similar claims regarding the warrant in his presentence interview with probation. Defendant did not put forth these claims at sentencing, but the trial judge referenced the letter when defendant was giving his allocution. The trial judge believed the forgery claims were without merit and instead believed it showed that defendant was not remorseful for his actions. Defendant was sentenced as a fourth offense habitual offender, MCL 769.12, to 15 to 40 years' imprisonment for delivery/manufacture of methamphetamine, 10 to 15 years' imprisonment for each count of being a felon in possession of a firearm and ammunition, and 16 months to 4 years' imprisonment for maintaining a drug house, to be served concurrently.

After defendant was sentenced, defendant's mother, Virginia Miller, executed an affidavit claiming that she watched Detective Brandon Helmrich sign a document and hand it to her at the conclusion of the search. She later determined this document was the search warrant. Ms. Miller believed that Detective Helmrich signed Magistrate S. Keith Bankston's name on the line that said "judge."

Defendant's first appellate counsel filed a brief raising one issue on appeal: whether defense counsel was ineffective for failing to challenge the search warrant. Defendant then filed a motion to substitute appellate counsel that this Court granted. Defendant's substituted appellate counsel filed a motion to remand for a *Ginther* hearing that this Court denied. This Court granted

defendant leave to file a supplemental brief; defendant's supplemental brief raised five additional issues on appeal.

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

On appeal, defendant argues his trial counsel was ineffective for failing to challenge the search warrant, and for leaving the courtroom during the trial, thus leaving co-counsel to conduct the trial.  We disagree.

## A.  STANDARD OF REVIEW

"Generally, a motion for a new trial or for an evidentiary hearing is a prerequisite to appellate review of a claim of ineffective assistance of counsel."  *People v Johnson*, 144 Mich App 125, 129; 373 NW2d 263 (1985).  Defendant filed a motion to remand for an evidentiary hearing with this Court, thus this issue is preserved.  See *id.*  A claim of ineffective assistance of counsel is "a mixed question of fact and constitutional law."  *People v Shaw*, 315 Mich App 668, 671; 892 NW2d 15 (2016).  This Court reviews the trial court's factual findings for clear error and reviews de novo questions of law.  *Id.* at 671-672.  "The trial court's findings are clearly erroneous if this Court is definitely and firmly convinced that the trial court made a mistake."  *Id.* at 672.

"Questions of law relevant to a motion to suppress evidence are reviewed de novo*."*  *People v Keller*, 479 Mich 467, 473; 739 NW2d 505 (2007).  "However, after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review."  *Id.*, at 474. (quotation marks omitted).  "A magistrate's determination of probable cause should be paid great deference by reviewing courts."  *Id.* (quotation marks omitted).

## B.  ANALYSIS

A defendant alleging ineffective assistance of counsel must, "at a minimum, show that (1) counsel's performance was below an objective standard of reasonableness, and (2) a reasonable probability exists that the outcome of the proceeding would have been different but for trial counsel's errors."  *People v Urbanski*, 348 Mich App 90, 98; 17 NW3d 430 (2023) (citation omitted).  See also *Strickland v Washington*, 466 US 668, 687-688; 104 S Ct 2052; 80 L Ed 2d 674 (1984).  There is a strong presumption that counsel's performance was born from sound trial strategy, and this Court will not second-guess counsel on matters of trial strategy.  *Urbanski*, 348 Mich App at 98; *Strickland*, 466 US at 689.

Defendant puts forth three pieces of evidence to support his claim that the magistrate's signature on the search warrant was forged: an affidavit from defendant's mother, an order for pretrial release from defendant's 2005 case bearing Magistrate Bankston's signature, and the last page of a pretrial release order entered in this case bearing Magistrate Bankston's signature. Defendant argues that MCL 780.651, which governs the procedure for issuing search warrants, does not permit another person to sign the warrant, even with a magistrate's permission.  While defendant is correct that another person cannot sign a warrant for a judge or magistrate, defendant has not established that is what occurred here.

Ms. Miller's affidavit provides, in pertinent part:

8. At approximately 10:45 a team member came into my home and that that [sic] they were leaving. I asked him what his name was and he replied Detective Helmrich and that he had the warrant and would list everything that was taken. He then signed the document.

9. After they left, I called a handyman to come over and to try and secure my door. It was at this time that I finally had a chance to examine the warrant, and it was at this time that I realized that Detective Helmrich but had rather [sic] signed S. Keith Bankston on the line that said judge.

From Ms. Miller's account, it is clear that she did not witness Detective Helmrich sign the magistrate's name on the search warrant. Rather, she witnessed Detective Helmrich sign the document and give it to her. She later came to the conclusion that Detective Helmrich signed "S. Keith Bankston" on the judge line.

The warrant has a space for the issuing judge's/magistrate's signature, and the Return and Tabulation section at the bottom has a space for the police officer's signature. The magistrate's signature clearly bears the name "S. Keith Bankston" as well as the magistrate's State Bar of Michigan number. The officer's signature is illegible. However, it is clear that the officer in charge, Detective Helmrich, was required to sign the Return and Tabulation portion before giving a copy to Ms. Miller. It is most likely that the warrant was already signed by Magistrate Bankston before law enforcement conducted the search, as required by MCL 780.651(3), and that Detective Helmrich signed his name as the officer in charge when the search was completed. Because defendant's mother did not see where on the document Detective Helmrich affixed his signature, the affidavit provides no basis to overcome this more reasonable presumption.

Defendant further argues that because Magistrate Bankston's signature on the warrant differs from his signature on two other orders, it must have been forged. Just because the "S" differs from previous signatures does not mean that it was forged. Apart from conjecture, defendant has not presented any evidence that the search warrant was invalid. Defendant's mother did not actually witness the officer sign the magistrate's name, and the difference between the signature on the warrant and the signatures on the pretrial release orders is negligible.

That being said, it is clear that defense counsel was not ineffective for failing to challenge the validity of the signature. Without more, defense counsel could not prove that the signature was forged on the evidence submitted to the trial court. Therefore, we cannot conclude that counsel's performance was deficient on this basis. See *Urbanski*, 348 Mich App at 98.

In his supplemental brief, defendant argues trial counsel was also ineffective for failing to move to suppress the search warrant on the basis that the affidavit of probable cause was insufficient. Defendant contends the affidavit for search warrant contained very limited information that did not constitute probable cause to search defendant's residence. Defendant asserts the affidavit did not establish probable cause because it did not specify the type and quantity of controlled substance the confidential informant purchased from defendant, nor does it specify that the confidential informant was seen buying drugs from defendant, leaving open the possibility the informant got the drugs from elsewhere.

The Fourth Amendment of the U.S. Constitution requires a search warrant to be supported by probable cause. US Const, Am IV. Probable cause exists if "there is a substantial basis for inferring a fair probability that evidence of a crime exists in the stated place." *People v Brown*, 297 Mich App 670, 675; 825 NW2d 91 (2012). "Probable cause must be based on facts presented to the issuing magistrate by oath or affirmation, such as by affidavit." *Id*.

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. [*Keller*, 479 Mich at 475 (quotation marks omitted).]

MCL 780.653 governs a magistrate's finding of probable cause and provides as follows:

> The judge or district court magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her. The affidavit may be based upon information supplied to the complainant by a named or unnamed person if the affidavit contains 1 of the following:
>
> (a) If the person is named, affirmative allegations from which the judge or district court magistrate may conclude that the person spoke with personal knowledge of the information.
>
> (b) If the person is unnamed, affirmative allegations from which the judge or district court magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable.

Here, Deputy Helmrich executed the affidavit for the search warrant of defendant's residence. Paragraph 3(A) of the affidavit details the Drug Task Force's five-year investigation of drug deals in St. Clair County. It goes on to explain that a credible and reliable confidential informant contacted the task force in December 2022 about defendant allegedly selling large quantities of controlled substances. The same or another confidential informant (it is not specified) contacted the task force in January and February 2023 about defendant selling drugs. The task force presented a photo of defendant to the informant and they confirmed that he was the individual selling drugs. The task force also set up two controlled buys within one month of the search in which a confidential informant purchased controlled substances from defendant. Paragraph 3(O) states that the confidential informants used had proven to be reliable and credible, and the confidential informants had conducted at least two previous controlled buys for the task force in the last two months. The affidavit also states that a criminal history check was conducted that revealed defendant had four prior convictions of felony possession with intent to deliver a controlled substance. Based on this affidavit, the magistrate issued the search warrant.

The affidavit in support of the search warrant was adequate to support a finding of probable cause. While defendant is correct that the affidavit does not specify the type or quantity of

controlled substance defendant was allegedly dealing, that is not required under the statute. See MCL 780.653. As long as affidavit contains "affirmative allegations" from which the magistrate may conclude that (1) the unnamed person spoke with personal knowledge of the information, and (2) either the unnamed person is credible or the information is reliable. See MCL 780.653(b). Paragraph 3(M) of the affidavit details that officers "observed and maintained constant surveillance on [defendant] from the pre-determined meet location to the sought to be searched location" during the controlled buys. While vague, the affidavit established the nexus between defendant, his residence, and the controlled substances he was selling. The controlled buys constituted affirmative allegations that the confidential informant had personal knowledge and reliable information. See MCL 780.653(b).

Furthermore, the affidavit states that the confidential informant confirmed defendant's identity with a photo and gave the police defendant's address. These facts tended to show that the confidential informant had personal knowledge of defendant's drug dealing activities. Thus, the affidavit put forth facts tending to show a fair probability that controlled substances would be found in defendant's residence. See *Keller*, 479 Mich at 475. The trial court did not err in finding probable cause to search defendant's residence. Any motion to suppress the search warrant based on a lack of probable cause would have been futile and, therefore, defense counsel was not ineffective for failing to file a motion to suppress. See *People v Brown*, 279 Mich App 116, 142; 755 NW2d 664 (2008) ("[D]efense counsel is not ineffective for failing to pursue a futile motion.").

Defendant also asserts that his defense counsel's performance was deficient because attorney Davis left the courthouse after co-counsel, attorney Richard Cummins, gave the opening statement at trial. When the trial court inquired as to Davis's whereabouts, Cummins stated, "I[t]'ll just be me proceeding at this point." The trial court stated that it did not find that appropriate because Davis was the attorney of record. The trial court ordered Davis to return to the courtroom and remain there for the duration of the trial because defendant had not filed a waiver and the attorneys had not given the court notice of the arrangement. Davis stated that Cummins had filed an appearance the morning of trial, and it was his understanding that his law firm represented defendant and that anyone from the firm could appear on the case. The trial court then explained that, in criminal cases, the attorney of record must be present. All of this occurred without the jury present. Both attorneys remained present throughout the two-day trial, but only attorney Cummins participated in cross-examining witnesses and objecting to evidence.

Defendant contends that because he had never met attorney Cummins before trial, attorney Cummins was unprepared and did not conduct a reasonable investigation. "Counsel always retains the duty to make reasonable investigations," and that applied to both attorneys here. See *People v Trakhtenberg*, 493 Mich 38, 52; 826 NW2d 136 (2012). However, defendant only points to the fact that counsel did not interview defendant or his mother about the possible forged search warrant as evidence counsel did not conduct a reasonable investigation. As stated earlier, forgery was a meritless claim because defendant's mother did not witness a forgery. Without evidence of an invalid search warrant, it cannot be said that counsel's decision not to pursue that defense was unreasonable.

While it was very unprofessional for attorney Davis to leave the courtroom and have an attorney that defendant had never met take the lead at trial, the record does not show that attorney

Cummins was unprepared. In his opening statement, Cummins advised the jury of the elements of each of the charged offenses and the applicable burden of proof. Cummins adequately cross-examined witnesses, made objections, and poked holes in the prosecution's case. The defense theory at trial was that defendant was merely a methamphetamine user and had no intention of selling the drug. To prove this, attorney Cummins noted that a used methamphetamine pipe was found on defendant, but the police did not take it into evidence. In closing, attorney Cummins asserted that the prosecution had not proven all of the elements of the two counts of felony firearm. This argument was effective because the jury acquitted defendant of the felony firearm charges.

Even if defendant received ineffective assistance of counsel when attorney Davis left the courtroom, defendant was not prejudiced by it. The jury was not present when this occurred and there is no indication in the record that a reasonable probability exists that the outcome of the proceeding would have been different but for defense counsel's errors. See *Urbanski*, 348 Mich App at 98. There was overwhelming evidence introduced at trial that defendant was selling methamphetamine, which included the large quantities of methamphetamine, the digital scale, and the plastic baggies. Therefore, defendant has not shown that but for counsel's errors, there is a reasonable probability that the outcome of trial would have been different.

## III. RIGHT TO COUNSEL

Defendant argues he was deprived of his right to counsel during his plea hearing because defense counsel was not present yet defendant was forced to proceed with the hearing without waiving his right to counsel. We agree.

### A. STANDARD OF REVIEW

"[A] defendant need not affirmatively invoke their right to counsel in order to preserve that right—the right is preserved absent a personal and informed waiver, and it is not forfeitable." *People v King*, 512 Mich 1, 14; 999 NW2d 670 (2023). "Therefore, without a valid waiver, a defendant remains entitled to the right to counsel for every critical stage of criminal proceedings." *Id*. A trial court's factual findings surrounding a defendant's waiver of the right to counsel are reviewed for clear error. *People v Russell*, 471 Mich 182, 187; 684 NW2d 745 (2004). To the extent the trial court's ruling involves an interpretation of the law, we review the trial court's interpretation de novo. *Id*.

### B. ANALYSIS

The right to the assistance of counsel is protected by both the U.S. Constitution and the Michigan Constitution. US Const, Am VI; Const 1963, art 1, § 20. "An accused's right to be represented by counsel is a fundamental component of our criminal justice system." *US v Cronic*, 466 US 648, 653; 104 S Ct 2039; 80 L Ed 2d 657 (1984). A defendant has the right to counsel at all critical stages of criminal proceedings. *King*, 512 Mich at 11. A plea hearing is a critical stage of criminal proceedings. *Id*., citing *Iowa v Tovar*, 541 US 77, 87; 124 S Ct 1379; 158 L Ed 2d 209 (2004). And while a claim of ineffective assistance requires a showing of prejudice, "complete denial of counsel during a critical stage of a judicial proceeding . . . mandates a presumption of prejudice because the adversary process itself has been rendered presumptively unreliable." *Roe*

*v Flores-Ortega*, 528 US 470, 483; 120 S Ct 1029; 145 L Ed 2d 985 (2000), citing *Cronic*, 466 US at 659 (quotation marks omitted). Thus "[t]he complete denial of counsel at a critical stage of a criminal proceeding is a structural error that renders the result unreliable, thus requiring automatic reversal." *King*, 512 Mich at 16, citing *Russell*, 471 Mich at 194 n 29. "In *Cronic*, the Supreme Court of the United States stated that it has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding. *People v Hieu Van Hoang*, 328 Mich App 45, 61-62; 935 NW2d 396 (2019), citing *Cronic*, 466 US at 659 n 25.

Representing oneself *in propria persona* requires giving a knowing, voluntary, and intelligent waiver of the right to counsel. *King*, 512 Mich at 11. To effectuate a valid waiver of the right to counsel, "a trial court must substantially comply with the factors set forth in *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), and MCR 6.005(D)." *Id*. "Under *Anderson*, 398 Mich at 367-368, the trial court must find that the following three factors have been met: (1) the defendant's request to represent themself is unequivocal, (2) the defendant is asserting the right knowingly, intelligently, and voluntarily after being informed of the dangers and disadvantages of self-representation, and (3) the defendant's self-representation will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." *Id*. at 11-12 (quotation marks omitted). The court rule provides that a trial court may not permit a defendant to waive the right to counsel without first,

(1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and

(2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer. [MCR 6.005(D)].

On September 12, 2023, defense counsel appeared for the first time for defendant's bench warrant arraignment. At the end of the arraignment, the trial court set the date for the plea hearing as October 9, 2023, and the parties confirmed their availability for that date. The trial court also set the trial date for October 24, 2023. On September 14, 2023, an entry in the Register of Actions shows the plea hearing was rescheduled to October 2, 2023 as "requested by plaintiff/attorney." The entry states that a notice to appear was issued. However, on October 2, 2023, defense counsel did not appear at the plea hearing. Defendant and the prosecutor were present. The prosecutor told the court that he had been communicating with defense counsel via email and that defense counsel got the dates mixed up. The prosecutor expressed that it was his understanding that defendant would not be pleading guilty and intended to go to trial, and stated that defense counsel confirmed this via email. The trial court asked defendant if this was correct and defendant said yes. The trial court confirmed the trial date and then stated to defendant, "Well, sir, I wish your lawyer could be here but, you know, [] you are not damaged by not having him here. Okay." Defendant replied, "Okay." And the court reiterated, "You're not hurt by that at all. If we're going to trial we're going to trial."

As indicated, defendant went to trial about a week later and was found guilty of possession with intent to deliver methamphetamine, two counts of being a felon in possession of a firearm,

one count of being a felon in possession of ammunition, and maintaining a drug house. Defendant was found not guilty of two counts of felony-firearm. On appeal, defendant argues that he was denied counsel at the plea hearing and this requires vacating his convictions in this case and another case that was pending during that time, because he argues any plea that could have been negotiated would have likely resolved all the charges in both cases.

Defendant's right to counsel was violated during the plea hearing because he was required to participate in the hearing without counsel present. See *King*, 512 Mich at 11. The trial court was aware defense counsel was absent due to a mistake in scheduling, yet conducted the hearing anyway. The trial court did not ask defendant if he wished to proceed in pro per nor did the court attempt to effectuate a waiver of defendant's right to counsel. The trial court then proceeded to ask defendant questions such as whether defendant discussed the plea offer with his attorney. Defendant confirmed that he would not accept the plea offer. Defendant was required to answer these questions without the assistance of counsel, which is a clear violation of his right to counsel during a critical stage of the criminal proceedings. See *Roe v Flores-Ortega*, 528 US at 483.

The plea hearing was the deadline to plead guilty before going to trial. As defendant points out on appeal, this deadline was extremely important for plea negotiations, as this deadline is often when plea offers are made that have not previously been offered. The trial court conducting this hearing without defense counsel present put defendant at a significant disadvantage. Defense counsel could have talked with the prosecutor before and during the hearing to negotiate a plea. Also, defense counsel had only been the counsel of record for about three weeks at the time of the plea hearing. Being new to the case, this may have been the first and last opportunity for defense counsel to negotiate a plea agreement.

The prosecutor argues that defendant intended to go to trial and his attorney confirmed this in an email to the prosecutor on the day of the plea hearing, and thus no constitutional violation occurred. However, no matter defendant's intent, defendant should not have been forced to participate in the plea hearing without defense counsel present. There is no way of knowing that, had counsel been present, defendant still would have rejected any plea offer. Defendant's right to counsel was violated because counsel was absent at a critical stage and the trial court did not obtain a valid waiver from defendant. See *Hieu Van Hoang*, 328 Mich App at 61-62. Therefore, defendant's convictions are vacated and he is entitled to a new trial. *King*, 512 Mich at 16.

Defendant also argues that his convictions in a separate case, St. Clair Circuit Court case no. 23-002026-FH (Court of Appeals docket no. 371448), should be vacated as well because the charges were pending at the time of the plea hearing in this case. Defendant contends that his attorney was in a position to resolve both cases at the plea hearing, and that justice requires defendant be put back in that same position. We disagree.

Defendant was charged with possession with intent to deliver methamphetamine and maintaining a drug house in case no. 23-002026-FH when methamphetamine was discovered in his residence while police were serving an arrest warrant for defendant's failure to appear at a previously scheduled plea hearing in this case. Defendant was convicted of both counts following a jury trial on March 30, 2024. The plea hearing for that case occurred on March 11, 2024. Defendant was represented by a public defender who was present at the plea hearing.

Defendant's right to counsel was not violated at the plea hearing in case no. 23-002026-FH because defense counsel was present and participated in the hearing. While it is true that defense counsel could have negotiated a plea involving both of defendant's cases at the plea hearing in this case, that is not a reason to vacate defendant's convictions in case no. 23-002026-FH absent a constitutional violation in that case. Defendant is currently appealing his convictions in case no. 23-002026-FH, so another panel of this Court will decide if any errors occurred that warrant relief.

## IV. CONCLUSION

We hold that defendant's right to counsel was violated when defense counsel was absent at the plea hearing. We vacate defendant's convictions and remand to the trial court for retrial. We do not retain jurisdiction. In light of this ruling, we need not consider defendant's remaining arguments on appeal.

/s/ Michael F. Gadola
/s/ Randy J. Wallace
/s/ Matthew S. Ackerman